**PENSION BENEFIT GUARANTY CORPORATION, Plaintiff,**

**v.**

**Walter L. ROSS, Donaldson & Co., Inc., and Invesco Capital Management Co., Inc., Defendants.**

**No. C-89-506-G.**

United States District Court, M.D. North Carolina, Greensboro Division.

March 30, 1990.

Carol Connor Flowe, John H. Falsey, Philip R. Hertz, Lois Bruckner Parks and Thomas H. Gabriel, Office of Counsel, Pension Ben. Guar. Corp., Washington, D.C., for plaintiff.

Charles A. Bentley, Jr., Durham, N.C., Sean M. Sullivan, Chicago, Ill., Charles Gordon Brown and M. LeAnn Nease, Durham, N.C., William C. Humphreys, Jr. and Gregory C. Braden, Atlanta, Ga., John Martin, Durham, N.C., and John G. Despriet, Atlanta, Ga., for defendants.

## MEMORANDUM OPINION

ERWIN, Chief Judge.

*Introduction*

This matter is before the court upon defendant Donaldson & Co.'s, (hereafter Donaldson) and defendant Invesco Capital Management Co.'s (hereafter Invesco) motion to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Alternatively, defendant Invesco moves to transfer venue to the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C.A. 1404(a) (West 1976). The parties have briefed the issues, and the court is ready for ruling. The court grants defendants' motion to dismiss with respect to Invesco and denies the motion with respect to Donaldson. The court also denies the motion to change venue.

*Factual Background*

On or about February 11, 1986, RPC, a North Carolina company, changed its pension plan from a non-directed fund to a directed one, thereby transferring control over the pension fund's investment assets from an independent trustee to a committee of company officers. Mr. Walter Ross, the president of RPC, was authorized to act on the committee's behalf as its chairman. Additionally, the plan's trustee was changed to the First National Bank of Atlanta (hereafter First Atlanta) which acted in the capacity of a directed trustee.

About a week after Mr. Ross assumed control over the pension plan, a meeting was held concerning the transfer of assets and investment decisions regarding the pension plan. Mr. Ross met with two First Atlanta representatives, Mr. Snell and Ms. Story, and a broker employed by defendant Donaldson, Ms. Stacy S. Jacobs. It was determined that the plan's assets were to be invested in mutual funds of the EBI Portfolio Management Program administered by defendant Invesco.

On February 20, 1986, a short time after the meeting, the plan's funds were transferred to First Atlanta in the amount of $651,000. The same day, $634,400 of the plan's funds were transferred to a clearing account for the purchase of the mutual funds. Meanwhile, without First Atlanta's knowledge, Mr. Ross contacted the plan's broker, Ms. Jacobs, an employee of defendant Donaldson, and told her that various pension plans were over funded and instructed her to transfer $215,000 out of the plan's funds to RPC for corporate borrowing purposes. Ms. Jacobs communicated Mr. Ross's instructions to defendant Invesco, and Invesco wired $215,000 to the RPC corporate account in Roxboro, North Carolina.[1]

On or about May 9 through May 12, 1986, Mr. Ross instructed Ms. Jacobs to withdraw $50,000 of the plan's assets for RPC's use. Ms. Jacobs instructed Invesco to liquidate $50,000 worth of mutual fund shares. Invesco complied with the request and retained for itself $1,359.78 as a "contingent deferred sales charge." Later in May, First Atlanta notified defendants that the transactions may have been prohibited under the Employee Retirement Income Security Act (hereafter ERISA) and unsuccessfully sought to recover the funds.

In July 1986, an involuntary petition was filed against RPC for liquidation under Chapter 7 of the Bankruptcy Code. The Pension Benefit Guaranty Corporation (hereafter PBGC) was appointed trustee. RPC's assets were sold and were insufficient to satisfy the obligations due to secured creditors. Thus, the plans received no payment on their claims. The plans terminated on July 31, 1986 and lacked sufficient funds to pay benefits due under them to their participants, which include benefits guaranteed under Title IV of ERISA.

On July 21, 1989, PBGC brought suit alleging that the defendants breached fiduciary duties to the plans under relevant sections of ERISA. Defendants Donaldson and Invesco strongly contest the allegation.

*Discussion*

Defendants Donaldson and Invesco moved to dismiss the complaint pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, defendants contend that PBGC cannot assert a claim against them under ERISA, §§ 409(a) and 502(a), 29 U.S.C.A. §§ 1109(a), 1132(a) (West 1985), because defendants are not fiduciaries by the meaning of the statute and thus cannot be held liable for fiduciary breaches that may have involved their participation.

Plaintiff attempts to hold defendants liable as non-fiduciaries for their alleged knowing participation in the commission of breaches of fiduciary duty with respect to the plan. Plaintiff predicates its action against these defendants upon traditional trust law principles rather than any direct

1. Plaintiff contends that it has information to the effect that a third attempt to withdraw money was made, but Donaldson refused after First Atlanta informed it that the prior withdrawal raised liability issues under ERISA.

provision within the ERISA statutory scheme.

Defendants have assailed plaintiff's reliance on trust law and the theory of "breach of trust" as counter to the mandates of the Supreme Court. As defendants point out, the Supreme Court has stated in *Massachusetts Mutual Insurance Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985):

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute." *Nachman Corp. v. Pension Benefits Guaranty Corp.,* 446 U.S. 359, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980).

Since there is no reference to the liability of plain non-fiduciaries in the various statutory provisions, defendants argue that Russell stands for the proposition that courts should not imply remedies absent strong evidence that it was consistent with the statutory scheme of ERISA or the legislative intent.

Defendant's look particularly to ERISA § 405(a), 29 U.S.C.A. § 1105(a) (West 1985), and ERISA § 409(b), 29 U.S.C.A. § 1109(b) (West 1985), to support their contention that Congress considered remedial measures for the conduct alleged against them but did not intend to hold non-fiduciaries liable for such conduct. ERISA § 405(a)(1), 29 U.S.C.A. § 1105(a)(1) (West 1985), titled "Liability for Breach of Co-fiduciary" states in relevant part:

> (a) Circumstances giving rise to liability
>
> In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach ...

The Employee Retirement Income Security Act, § 409(b), 29 U.S.C.A. § 1109(b), reads as follows: "No fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary."

Defendants correctly note that the circumstances that trigger § 405(a) liability for co-fiduciaries parallel the allegations leveled against them as non-fiduciaries; however, the period limitation found in § 409(b) in no way excuses otherwise unlawful conduct as defendants suggest. Section 409(b), read in context to the other provision, simply states that fiduciaries cannot be held liable as such for conduct that occurred before their arrival or after their departure. The latter provision provides a time frame limitation to avoid liability for conduct in which the individuals were not deemed participants. It is perfectly consistent with the statutory scheme to hold others liable for the knowing participation in a fiduciary's breach.

In any case, the Supreme Court in *Russell* expressly held open the question whether § 502(a) of ERISA authorizes the recovery of extra-contractual damages. *Id.* 473 U.S. at 141 n. 5, 105 S.Ct. at 3090 n. 5. In fact, Justice O'Conner, writing for a unanimous court, stated more recently, albeit *dicta,* in *Firestone Tire and Rubber Co. v. Bruch,* — U.S. ——, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989):

> ERISA abounds with the language and terminology of trust law. ERISA's legislative history confirms that the Act's fiduciary responsibility provisions, 29 U.S.C. §§ 1101–1114, "codif[y] and make[ ] applicable to [ERISA] fiduciaries certain principles developed in the evolution of the law of trusts." Given this language and history, we have held that courts are to develop a "federal common law of rights and obligations under

ERISA-regulated plans." (Citations omitted.)

The law of trusts recognizes a cause of action against third persons for their knowing participation in a breach of trust. *See Fruend v. Marshall & Ilsley Bank,* 485 F.Supp. 629 (W.D.Wis.1979); Restatement (Second) of Trusts § 326 comment a (1959); Scott on Trusts § 326.5 (Rev. 4th ed. 1989). In this light, defendants' argument must falter to the extent that trust law cannot be ignored in an ERISA case.

The defendants further direct the court's attention to *Nieto v. Ecker,* 845 F.2d 868 (9th Cir.1988), which provides strong support for the proposition that courts should not imply remedies of trust law where there would be no basis for liability in the statute. The Court of Appeals for the Ninth Circuit has criticized and rejected the principle that non-fiduciaries can be held liable for aiding a fiduciary in a breach of a fiduciary duty. At the core of the court's criticism was the plaintiff's reliance on *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629 (W.D.Wis.1979). The *Freund* case asserted that the courts were empowered by the express congressional intent to award the relief available in trust law against nonfiduciaries who knowingly participate in a breach of trust. The *Nieto* court disagreed with Judge Larson's reading of the congressional intent, stating that "it provides no support for the incorporation of state law causes of actions as a supplement to the explicit provisions of ERISA." The court then rejected the proposition that the common law of trust supplies a federal cause of action where the statute itself provides none.

While the Court of Appeals for the Fourth Circuit has not addressed this precise issue, it has read the legislative history of ERISA in a starkly different light. In *Powell v. Chesapeake and Potomac Telephone Company of Virginia,* 780 F.2d 419, 424 (4th Cir.1985), the Court of Appeals for the Fourth Circuit stated: "The legislative history supports [plaintiff's] theory that Congress intended to import into ERISA principles of trust law." Moreover, the *Powell* court endorsed the idea that some forms of equitable relief outside the explicit statutory language may be available in certain circumstances. *Id.* Although the Fourth Circuit did not enumerate the instances when such relief would be available, it stated long ago: "The law exacts the most perfect good faith from all parties dealing with a trust respecting trust property." *King v. Richardson,* 136 F.2d 849, 860 (4th Cir.1943). The prior decisions of this circuit strongly suggest that the principle articulated in *Fruend* and its progeny are available contrary to the dictates of *Nieto.*

Upon defendants' motion to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure, all the allegations and conclusions reasonably drawn from the complaint are presumed to be true. In this posture, plaintiff has alleged a cognizable cause of action against defendant Donaldson as a non-fiduciary for its knowing participation in a breach of trust. However, the complaint does not allege enough information to establish any inference that Donaldson was a fiduciary. Furthermore, nowhere in the complaint are there any facts which suggest that Invesco knew about any breach of fiduciary duty or was in a position to know such information. Therefore, the motion to dismiss with respect to Invesco is granted.

In light of its ruling with respect to defendant Invesco, the court denies the motion to transfer venue.

### *Conclusion*

For the reasons stated above, the motion to dismiss with respect to defendant Donaldson is denied, and the motion to dismiss with respect to Invesco is granted. The motion to transfer venue is also denied. A judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.