William J. **MERTENS**; Alex W. **Bandrowski**; James A. **Clarke**; Russell **Franz**, Plaintiffs–Appellants,

v.

**HEWITT ASSOCIATES**, an Illinois Partnership; Kaiser Steel Retirement Plan; Pension Benefit Guaranty Corporation, as statutory trustee of the Kaiser Steel Retirement Plan, Defendants–Appellees.

No. 90–16272.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 14, 1991.

Decided Nov. 4, 1991.

Alfred H. Sigman, Sigman & Lewis, Oakland, Cal., for plaintiffs-appellants.

Steven H. Frankel, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for defendants-appellees.

Before NORRIS and THOMPSON, Circuit Judges, and KING, District Judge.*

DAVID R. THOMPSON, Circuit Judge:

Plaintiffs, former employees of Kaiser Steel Corporation ("Kaiser") and participants in its ERISA qualified pension plan, brought this action against the plan's actuary, Hewitt Associates ("Hewitt"), for ERISA-based and pendent state claims. The district court dismissed all of the plaintiffs' claims and entered judgment in favor of Hewitt. We affirm the district court's dismissal of the ERISA-based claims, but reverse its dismissal of the pendent state law claim.

* Hon. Samuel P. King, Senior United States District Court Judge for the District of Hawaii, sitting by designation.

## FACTS

On a motion to dismiss, all material allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Call v. Sumitomo Bank*, 881 F.2d 626, 630 (9th Cir.1989). With this in mind, we state the following facts as alleged by the plaintiffs and take these facts as true for the purpose of deciding this appeal.

According to the plaintiffs, Kaiser hired Hewitt to perform actuarial work for its ERISA plan. Early in 1980, Kaiser restructured its business operations and virtually eliminated its steel-making operations. As a result, the number of employees retiring from the company who were entitled to early retirement benefits under the plan increased significantly, as did the plan's funding costs.

The actuarial assumptions Hewitt had developed previously for the plan did not reflect the increased costs, and Hewitt did not change its assumptions to reflect the increase. Rather, Hewitt delegated the responsibility for selecting actuarial assumptions to Kaiser.

According to the plaintiffs, Hewitt's conduct was improper. Had Hewitt employed proper actuarial assumptions, Kaiser would have had to make substantially higher contributions to the plan. Hewitt failed to disclose this funding inadequacy in any certificate or other writing which it prepared on behalf of the plan. As a consequence of Hewitt's acts and omissions, Kaiser failed to fund the plan adequately, and the plan's assets became insufficient to satisfy benefit commitments, including the commitment to pay the plaintiffs their fully vested pensions.

The plaintiffs further alleged that at the same time Hewitt was performing services for the plan, it was also providing actuarial services to Kaiser. Hewitt did not want to jeopardize this lucrative professional relationship. Hewitt failed to disclose to plan administrators its relationship with Kaiser and the potential conflict that the relationship created.

In October 1986,[1] the Pension Benefit Guaranty Corporation ("PBGC") determined that the plan was underfunded and incapable of paying its liabilities, including the pension benefits owed to the plaintiffs. As a result of the underfunding, the PBGC terminated the plan and began paying the plaintiffs and other plan participants substantially reduced benefits. For example, one plaintiff's monthly check was reduced from $2,016 to $521. Other plaintiffs suffered comparable reductions.

The plaintiffs' complaint alleged three causes of action: a cause of action based on ERISA for "breach of professional duties to the plan;" a cause of action based on ERISA for "unlawful party-in-interest transactions;" and a professional malpractice claim under California law. The PBGC answered and filed a cross-claim in which it asserted that any recovery by the plaintiffs should be paid to it.

Hewitt filed a motion to dismiss the plaintiffs' complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). It argued that the entire complaint was barred by the statute of limitations and also that the ERISA claims were insufficient as a matter of law.

In their response to the motion, the plaintiffs asserted that their first claim actually stated three independent claims under ERISA: a claim for breach of fiduciary duty; a claim for knowing participation in a breach of fiduciary duty; and a claim for non-fiduciary breach of actuarial duties. They stood by their remaining claims.

In its order granting the motion to dismiss, the district court determined that the ERISA claims were insufficient as a matter of law. The court also held that the pendent state claim was barred by the applicable California limitation period. It dismissed the PBGC's claim as derivative.

---

1. The appellants' opening brief stated that the 1986 date in the complaint is incorrect, and that the PBGC actually terminated the plan in February 1987. The resolution of this question is irrelevant to the outcome of this appeal. *See infra* note 10.

The plaintiffs did not seek leave to amend their complaint, and this appeal followed.[2]

## DISCUSSION

### A. Claim for Breach of Fiduciary Duty

An ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration. 29 U.S.C. § 1002(21)(A);[3] *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987). A party "rendering professional services to a plan is not a fiduciary so long as he does not exercise any authority over the plan 'in a manner other than by usual professional functions.'" *Nieto v. Ecker*, 845 F.2d 868, 870 (9th Cir.1988), quoting *Yeseta v. Baima*, 837 F.2d 380, 385 (9th Cir.1988).

The district court held that the complaint failed to state a claim for breach of fiduciary duty because nothing in the complaint indicated that Hewitt had done anything other than render actuarial services to the plan. Further, nothing in the complaint indicated that Hewitt exercised control or authority over plan assets. Although the plaintiffs allege that Hewitt acted negligently, fraudulently, and reprehensibly as an actuary, no inference can be made from the complaint that Hewitt acted in any capacity other than as an actuary.

Although the courts have recognized the possibility that professional service providers can be liable as ERISA fiduciaries, they consistently have found attempts to assert liability on that basis unavailing. For example, the *Nieto* court affirmed the district court's dismissal of a claim against an attorney who allegedly rendered services to an ERISA plan in an improper and fraudulent manner. Because the complaint did not allege that the attorney had authority over plan assets, the court rejected the argument that he was an ERISA fiduciary, even though his dishonesty may have led to the dissipation of plan assets. 845 F.2d at 870–71; *see also Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535–38 (7th Cir. 1991) (actuary was not fiduciary where there was no allegation that it had "actual decision-making power"); *Yeseta v. Baima*, 837 F.2d 380, 384–85 (9th Cir.1988) (attorney and accountant who did not exercise actual control over management of plan not fiduciaries); 29 C.F.R. § 2509, 75–5 (1990) (actuary not fiduciary solely by virtue of rendering services to plan).

In their brief, the plaintiffs rely primarily on *Monson v. Century Mfg. Co.*, 739 F.2d 1293, 1303 (8th Cir.1984). In *Monson*, the court upheld a district court's finding of liability for breach of fiduciary duties against the general manager of a plan sponsor. The district court noted that the manager had worked on relevant amendments to the plan, had consulted on the plan's behalf with independent experts regarding plan investments, had authority to issue press releases on behalf of the plan, and was responsible for informing employees about the plan. *Id.*

*Monson* is easily distinguishable from this case. Unlike the general manager in *Monson*, Hewitt was an independent actuary, not part of the plan sponsor's control group. Also, unlike the facts in *Monson*, the plaintiffs' allegations do not indicate that Hewitt had any control over the plan's operation or administration.

We conclude the district court correctly held that the plaintiffs' allegations failed to

---

**2.** The plaintiffs have not appealed dismissal of their ERISA claim for "unlawful party-in-interest transactions."

**3.** 29 U.S.C. § 1002(21)(A) provides in relevant part:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

state a claim for breach of fiduciary duty under ERISA.

## B. Claim for Knowing Participation in Breach of Fiduciary Duty

█ The plaintiffs argue that even if Hewitt is not a fiduciary, it still may be liable under ERISA if it knowingly participated in another's breach of fiduciary duty.

ERISA provides that any person who is a fiduciary to a plan who breaches any duty imposed by the statute is personally liable to the plan. 29 U.S.C. § 1109(a).[4] ERISA's civil enforcement section provides that a civil action may be brought by the Secretary or by a plan participant, beneficiary, or fiduciary for relief under section 1109. 29 U.S.C. § 1132(a)(2).[5]

In *Nieto,* we held that the plain language of section 1109(a) "limits its coverage to fiduciaries, and nothing in the statute provides any support for holding others liable under that section." 845 F.2d at 871. We rejected the argument that a non-fiduciary could be liable under this section for knowing participation in a breach of fiduciary duty. *Id.*[6]

Plaintiffs contend that we can and should overrule *Nieto* because Congress' enactment of the Omnibus Budget Reconciliation Act of 1989 and its addition of a new enforcement provision to ERISA, 29 U.S.C.

§ 1132(*l*),[7] clarified Congress' intent to permit suits for knowing participation in a breach of fiduciary duty. Section 1132(*l*) gives the Secretary of Labor the power to assess a civil penalty against fiduciaries or other persons in certain amounts based upon "any knowing participation" in such a breach of fiduciary duty. The plaintiffs note that section 1132(*l*) refers to judicial proceedings brought by the Secretary under sections 1132(a)(2) or (a)(5). Section 1132(a)(2) in turn allows both the Secretary and plan participants to bring civil actions. The plaintiffs therefore conclude that because Congress in section 1132(*l*) gave the Secretary the ability to bring an action against non-fiduciary assistants under 1132(a)(2), it implicitly gave plan participants the same ability.

We reject this argument. The plain language of section 1132(*l*) applies to the Secretary only, not to plan participants. "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985), quoting *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 246–47, 62 L.Ed.2d 146 (1979); *see also Nieto,* 845 F.2d at 872.

---

**4.** Section 1109(a) provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

**5.** Section 1132 provides in relevant part:

(a) A civil action may be brought—

.    .    .    .    .

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title ...

**6.** We subsequently followed *Nieto* in *Call v. Sumitomo Bank,* 881 F.2d at 634–35.

**7.** Section 1132(*l*) provides in relevant part:

(1) In the case of—
  (A) any breach of fiduciary responsibility ... or
  (B) any knowing participation in such a breach or violation by any other person,
the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount.
(2) For purposes of paragraph (1), the term "applicable recovery amount" means any amount which is recovered from a fiduciary or other person with respect to a breach ...
  (A) pursuant to any settlement agreement with the Secretary, or
  (B) ordered by a court to be paid by such fiduciary or other person to a plan or its participants and beneficiaries in a judicial proceeding instituted by the Secretary under subsection (a)(2) or (a)(5) of this section.

In drafting the ERISA amendments in 1989, Congress considered but rejected an amendment to overrule our decision in *Nieto.* H.R.Rep. No. 101–247, 101st Cong., 1st Sess. 77–78, *reprinted in* 1989 U.S.Code Cong. & Admin.News 1906, 1969–70. We decline to do what Congress has refused to do.

## C. Claim for Non–Fiduciary Violations of ERISA

■ The plaintiffs also argue that their first cause of action states a claim under 29 U.S.C. § 1132(a)(3), which provides that plan participants may seek equitable relief to redress violations of ERISA.[8] By this claim, the plaintiffs sought a recovery of money from Hewitt for its alleged improper acts.

The only way the district court could fashion an equitable remedy under ERISA to provide a monetary recovery for the plaintiffs against Hewitt would be to order restitution. The district court dismissed this claim, however, because the plaintiffs had not alleged that Hewitt received anything other than its compensation for actuarial services. We agree with this analysis. Restitution was not available because unjust enrichment to support the plaintiffs' claim was not alleged.

■ Moreover, restitution requires that there be a direct link between the loss complained of and the recovery sought. *See Scanwell Laboratories, Inc. v. Thomas,* 521 F.2d 941, 949–50 (D.C.Cir.1975), *cert. denied,* 425 U.S. 910, 96 S.Ct. 1507, 47 L.Ed.2d 761 (1976) (to make out a claim for restitution "it is usually necessary for the plaintiff to show that he conferred the benefit"). Here, no such link exists. The plaintiffs allege that Hewitt was paid by Kaiser, not from assets of the plan. It is not possible, therefore, to frame a claim for restitution in terms of the recovery of plan

assets wrongfully obtained by Hewitt. *See United States ex rel. Youngstown Welding and Eng'g Co. v. Travelers Indem. Co.,* 802 F.2d 1164, 1169 (9th Cir.1986) (party who is not source of unjust enrichment is not entitled to restitution under Arizona law).

The plaintiffs argue that to the extent Kaiser was paying Hewitt, it was doing so as remuneration for breach of Hewitt's statutory duty and that all payments received by Hewitt were thus "unjust enrichment." The plaintiffs, however, have provided no authority that supports this theory. Moreover, to accept the plaintiffs' argument would be to obliterate the already blurry distinction between restitution and damages at law. Given that ERISA explicitly limits claims pursuant to subsection (a)(3) to claims for equitable relief, such an expansion would appear contrary to the spirit of the statute. *See Nieto,* 845 F.2d at 873 (permitting recovery of damages under subsection (a)(3) would render subsection (a)(2) superfluous, "a result contrary to a fundamental cannon of statutory construction").[9]

We conclude that the district court did not err in dismissing the plaintiffs' non-fiduciary ERISA claim for restitution.

## D. Pendent California Professional Malpractice Claim

■ The district court dismissed the plaintiffs' pendent professional negligence claim as time barred. The parties agree that California Code of Civil Procedure § 339(1), the two-year statute of limitations for professional malpractice claims, governs this pendent claim. The dispute is over when the claim accrued.

In California, the statute of limitations for a professional malpractice claim begins to run upon the occurrence of the last fact essential to the cause of action. "The

**8.** Section 1132(a)(3) provides in relevant part: A civil action may be brought—

  .   .   .   .   .

  (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other

appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

**9.** Even under this somewhat circuitous theory of unjust enrichment, the plaintiffs failed to allege Hewitt obtained anything from the plan.

harshness of this rule has been ameliorated in some cases where it is manifestly unjust to deprive the plaintiffs of a cause of action before they are aware that they have been injured." *Leaf v. City of San Mateo,* 104 Cal.App.3d 398, 406, 163 Cal.Rptr. 711, 715 (1980). This is generally known as the "discovery rule."

Where the "discovery rule" applies, "the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause. A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be discovered through investigation of sources open to her." *Jolly v. Eli Lilly & Co.,* 44 Cal.3d 1103, 1109, 245 Cal.Rptr. 658, 661, 751 P.2d 923, 926–27 (1988) (citation and footnote omitted). California courts have applied the discovery rule to professional malpractice cases. *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971) (attorney malpractice); *Moonie v. Lynch,* 256 Cal. App.2d 361, 64 Cal.Rptr. 55 (1967) (accountant malpractice).

■ Hewitt does not contest that the discovery rule applies here. Rather it argues that the plaintiffs should have discovered Hewitt's alleged wrongs in 1986, when the plan failed.[10] It argues that the plaintiffs had access to plan reports that would have alerted them to any actuarial improprieties. It asserts that certainly when the plan failed, the plaintiffs were on notice and should have obtained the reports that would have alerted them to the funding problems.

Hewitt's argument fails under California law. "[T]he question of when there has been a belated discovery of the cause of action, especially in malpractice cases, is essentially a question of fact ... [and] [i]t is only where reasonable minds can draw but one conclusion from the evidence that the question becomes a matter of law." *Brown v. Bleiberg,* 32 Cal.3d 426, 436, 186 Cal.Rptr. 228, 233, 651 P.2d 815 (1982).

In *Baright v. Willis,* 151 Cal.App.3d 303, 198 Cal.Rptr. 510 (1984), the court refused to sustain a demurrer in a professional negligence case where the plaintiff's complaint did not show on its face that "in the exercise of due diligence plaintiff should have earlier discovered respondent's alleged negligence and failed to do so." 151 Cal.App.3d at 311, 198 Cal.Rptr. at 514–15. A demurrer on statute of limitations grounds is improper "where the complaint merely shows that the action may have been barred. It must appear affirmatively that, upon the facts stated, the right of action is necessarily barred." 151 Cal.App. 3d, at 311, 198 Cal.Rptr. at 514, quoting *Vassere v. Joerger,* 10 Cal.2d 689, 693, 76 P.2d 656, 653 (1938).

In the present case, the complaint does not show on its face that the plaintiffs should have discovered Hewitt's alleged negligence when the PBGC determined the plan to be severely underfunded and incapable of paying its liabilities. The PBGC may terminate a plan for a variety of reasons not premised on wrongdoing by either the plan fiduciaries or the plan's enrolled actuary. *See* 29 U.S.C. § 1342(a). *See also Pension Benefit Guaranty Corp. v. LTV Corp.,* — U.S. —, 110 S.Ct. 2668, 2672–73, 110 L.Ed.2d 579 (1990) (plan sponsor entering bankruptcy). Reasonable minds can draw more than one conclusion from the circumstance of underfunding.

Thus, we reverse the district court's dismissal of the pendent state claim as barred by the applicable statute of limitations. The complaint does not show on its face that the plaintiffs were placed on a discovery inquiry as to Hewitt's alleged professional malpractice more than two years before the complaint was filed. On remand, the district court has discretion to

---

10. The plaintiffs' complaint alleged that "[i]n October, 1986, the PBGC determined the PLAN to be severely underfunded and incapable of paying its liabilities, including the full early retirement monthly pension benefits owed to the plaintiffs and other similarly situated PLAN participants and beneficiaries."

Even if, as the plaintiffs now claim, the PBGC made the determination in February 1987, the result is the same—the complaint was not filed until December 1989, two years and nine months after the later date.

allow the plaintiffs to pursue the pendent claim or to dismiss it. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## CONCLUSION

The district court's dismissal of the ERISA-based claims is affirmed. The district court's dismissal of the pendent state claim is reversed and remanded.

AFFIRMED in part, REVERSED in part and REMANDED.