**Lynn MARTIN, Secretary of Labor, United States Department of Labor**

v.

**Robert L. JOHNSTON, et al.**

**Civ. No. 89–002–S.**

United States District Court, D. New Hampshire.

April 24, 1992.

---

**8.** *See* # 56, pp. 16–17.

Marjorie A. Butler, Boston, MA, for plaintiff.

---

John W. Spillane, Worcester, MA, for defendants.

## ORDER

STAHL, District Judge.

In this civil action, the Secretary of the United States Department of Labor ("the Secretary") sues a number of individuals and organizations involved in managing an employee benefit plan governed by the federal Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* By Order dated October 17, 1991, this Court held, *inter alia,* that a claim against a non-fiduciary is not cognizable under 29 U.S.C. §§ 1109, 1132(a)(2). Currently before the Court is the Secretary's motion for reconsideration urging the Court to reverse that portion of its October 17, 1991, Order.

In her motion for reconsideration, the Secretary makes two new arguments [1] in support of her position that non-fiduciaries can be held liable under ERISA: (1) the Court did not consider § 1132(a)(5)(B) of the statute in making its decision; and (2) recent case law compels a conclusion that a non-fiduciary can be held liable under ERISA. *See Mertens v. Hewitt Associates,* 948 F.2d 607, 611–12 (9th Cir.1991); *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 18 (2d Cir. 1991), *petition for cert. filed,* 60 U.S.L.W. 2102 (U.S. Oct. 22, 1991) (No. 91–681); *Reid v. Gruntal & Co., Inc.,* 763 F.Supp. 672, 676–77 (D.Me.1991). The Court discusses each argument in turn.

### 1. Impact of § 1132(a)(5)(B)

The Secretary contends that the Court did not consider § 1132(a)(5)(B) [2] in reaching the conclusion that non-fiduciaries cannot be held liable under ERISA. *See* October 17, 1991, Order at 10–14. In so doing, the Secretary argues that the phrase "oth-

---

**1.** The Court has carefully reconsidered each of the arguments that the Secretary made in her original brief and found them to be without merit. In this Order, therefore, the Court limits its discussion to those arguments that the Secretary presents for the first time in her motion for reconsideration.

**2.** Section 1132(a)(5)(B) of the statute allows the Secretary to bring a civil action:

... (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain *other appropriate equitable relief* (i) to redress such violation or (ii) to enforce any provision of this subchapter ...[.]

29 U.S.C. § 1132(a)(5)(B) (emphasis added).

er appropriate equitable relief" gives the Court the authority under ERISA to fashion a cause of action against non-fiduciaries where one does not exist under § 1109 and § 1132(a)(2).[3]

While it did not explicitly mention § 1132(a)(5)(B) in its original Order, the Court did indeed consider that section in its analysis of the statutory language. By refusing to adopt the holding of *Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 641–42 (W.D.Wis.1979), the Court expressly rejected its reasoning. *See* October 17, 1991, Order at 11. The *Freund* court rested its broad reading of the statute on the language "other appropriate equitable relief" in §§ 1132(a)(5)(B) and (a)(3)(B).[4] *See Freund*, 485 F.Supp. at 641. In *Freund*, the Court concluded that the phrase "other appropriate equitable relief[,]" when coupled with ERISA's legislative history which suggests that courts should employ trust law when construing the statute, "fully empowered" it to reach outside the literal language of the statute to hold non-fiduciaries liable. *See id.* at 641–42.[5]

▮ While the Court did not specifically so state in its October 17, 1991, Order, it does not give the phrase "other appropriate equitable relief" in §§ 1132(a)(3)(B) and (a)(5)(B) such a broad reading. *See Drinkwater v. Metro. Life. Ins. Co.*, 846 F.2d 821, 824 (1st Cir.1988), *cert. denied*, 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988) (" '[o]ther appropriate equitable relief' should be interpreted to mean what it says—declaratory or injunctive relief . . ."). *But see Reid v. Gruntal*, 763 F.Supp. 672, 675–76 (D.Me.1991) (challenging *Drinkwa-*

*ter's* limited construction of the phrase). While the phrase could be construed to give courts wide latitude in fashioning *remedies* for fiduciary breaches, *see Gruntal*, 763 F.Supp. at 677, the Court declines to read the phrase as creating a *cause of action* against non-fiduciaries, a party not mentioned in the statute. *Accord Useden*, 947 F.2d at 1582 ("[the] relevant provisions [do not] imply a cause of action for monetary damages against a party excluded by—but clearly within the contemplation of—Congress at the time it formulated the ERISA scheme").

## 2. Recent Case Law

In her motion for reconsideration, the Secretary also contends that recent case law supports her position on non-fiduciary liability under ERISA. First, the Secretary cites *Gruntal*, 763 F.Supp. at 676, for the proposition that the phrase "other appropriate equitable relief" in §§ 1132(a)(3)(B) and (a)(5)(B), when read in conjunction with §§ 1132(a)(2) and 1109(a), "leads inexorably" to the conclusion that non-fiduciaries can be held liable under the statute.

In *Gruntal*, the Court held that the phrase "other appropriate equitable relief" in § 1132(a)(3)(B) permitted the plaintiff to recover consequential damages under a promissory estoppel theory. *Gruntal*, 763 F.Supp. at 678. The defendant in that case argued that § 1132(a)(3) provided remedies only for breaches of fiduciary duty. Faced with the question of whether § 1132(a)(3) permitted a plaintiff to recover under a theory other than breach of fiduciary duty,

---

**3.** Sections 1132(a)(2) and 1109(a) create a civil action holding personally liable any fiduciary of an employee benefit plan "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter . . . [.]"

**4.** Section 1132(a)(3) is the companion enforcement provision to § 1132(a)(5) for private parties.

**5.** A long line of cases are in accord with *Freund's* reasoning. *See, e.g., Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988); *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1220 (2d Cir.1987); *Fink v. Nat. Savings & Trust Co.*, 772 F.2d 951, 958 (D.C.Cir.1985) (dicta);

*Thornton v. Evans*, 692 F.2d 1064, 1078 (7th Cir.1982); *Dole v. Compton*, 753 F.Supp. 563, 565–69 (E.D.Pa.1990); *Pension Benefit Guar. Corp. v. Ross*, 733 F.Supp. 1005, 1006–08 (M.D.N.C.1990); *Pension Fund–Mid Jersey Trucking Ind. v. Omni–Funding Group*, 731 F.Supp. 161, 177–79 (D.N.J.1990).

As made clear in its original Order, however, the Court declines to follow *Freund* and its progeny, and relies instead upon a plain reading of the relevant statutory language. *See* October 17, 1991 Order at 10–14. *Accord Useden v. Acker*, 947 F.2d 1563, 1579–82 (11th Cir.1991); *Nieto v. Ecker*, 845 F.2d 868, 872–73 (9th Cir.1988); *Framingham Union Hosp., Inc. v. Travelers Ins. Co.*, 744 F.Supp. 29, 31–33 (D.Mass.1990).

the court in *Gruntal* read § 1132(a)(3) broadly. Essentially, the court reasoned that § 1132(a)(3) had to be read to include remedies different from those provided in the remainder of § 1132(a). *Id.* at 676–77. The court, therefore, allowed the plaintiff to sue a fiduciary under the equitable theory of promissory estoppel—a theory that would provide consequential damages unavailable under § 1132(a)(2). *Id.*

While *Gruntal* supports a broad reading of § 1132(a)(3)(B), and its companion provision § 1132(a)(5)(B), it does not go so far as to find a cause of action against a non-fiduciary, a party not mentioned in the statute. The reasoning in *Gruntal* merely broadens the remedies available against fiduciaries. Thus, the Court declines to extend its holding in the manner requested by the Secretary.

Next, the Secretary cites *Chemung*, 939 F.2d 12, 16, for the proposition that ERISA includes a cause of action against non-fiduciaries. In *Chemung*, the court read ERISA broadly to permit fiduciaries to sue other fiduciaries for contribution. *Chemung*, 939 F.2d at 18 ("... [C]ongress wanted courts to fill any gaps in the statute by looking to traditional trust law principles. We conclude that incorporating traditional trust law's doctrine of contribution and indemnity into the law of ERISA is appropriate.").

The Court notes that the Second Circuit's reasoning in *Chemung* is entirely consistent with *Lowen*, 829 F.2d at 1220, in which the Second Circuit held that ERISA contains a cause of action against non-fiduciaries. *See Lowen*, 829 F.2d at 1220 ("[a]uthority for recovery against non-fiduciaries

is derived from trust law principles, upon which ERISA is based ... and on ERISA's remedial provisions ...") (citing *Freund*, 485 F.Supp. at 641–42, and 29 U.S.C. § 1132(a)(3)). However, the Court has declined to follow the reasoning in *Lowen*. *See, supra,* at n. 4; *see also* October 17, 1991, Order at 10–14. Similarly, the Court is not persuaded by the reasoning in *Chemung* to reverse its holding on the question of non-fiduciary liability under ERISA.

Finally, the Secretary cites a recent Ninth Circuit case which, she contends, constitutes a challenge to the vitality of *Nieto*, 845 F.2d at 871, a landmark Ninth Circuit case holding that non-fiduciaries cannot be held liable under ERISA. *See Mertens*, 948 F.2d at 611. In *Mertens*, the court held that the existence of 29 U.S.C. § 1132(*l*) [6] did not require it to overrule *Nieto*. In so holding, the court noted that Congress "considered but rejected" an opportunity to overrule *Nieto*. *See Mertens*, 948 F.2d at 612.[7] The court then went on to state that it "decline[d] to do what Congress has refused to do." *Id.* Thus, the court in *Mertens*—albeit without much explanation—expressly refused to overrule its holding in *Nieto*. Contrary to the Secretary's assertion, therefore, *Nieto* remains good law.

In summary, the Court notes that while the Secretary's position on this question might make good sense from a practical perspective, "such good sense does not always find its way into legislation enacted by Congress ...[.]" *See Chemung*, 939 F.2d at 18 (Altimari, J., concurring in part and dissenting in part). Were this Court invested with legislative powers, perhaps it

---

**6.** 29 U.S.C. § 1132(*l*)(1), a 1989 amendment to ERISA entitled "civil penalties on violations by fiduciaries[,]" states:

(1) In the case of—
  (A) any breach of fiduciary responsibility under (or other violation of) part 4 by a fiduciary, or
  (B) any knowing participation in such a breach or violation by any other person,
the Secretary shall assess a civil penalty against such fiduciary or other person in an amount equal to 20 percent of the applicable recovery amount.

**7.** While drafting the 1989 amendments to ERISA, Congress considered but rejected a provision to:

  ... resolve[ ] the conflict in the courts of appeal by clarifying Congressional intent to codify in ERISA the common law of trusts as it applies to employee benefit plans. The bill's language specifically adopts the familiar trust law doctrine that a knowing participant in a breach of fiduciary duty may be held jointly and severally liable for the loss sustained by a breach of trust in which the knowing participant participates.

H.R.Rep. No. 101–247, 101st Cong., 1st Sess. 77–78, *reprinted in* 1989 U.S.C.C.A.N. 1906, 1970.

would amend the statutory language to include a cause of action against non-fiduciaries.[8] Without support in the language of the statute for holding non-fiduciaries liable, however, this Court action.[9] Thus, the Court denies the Secretary's motion for reconsideration.[10]

■ Accordingly, for the reasons herein stated, the Secretary's motion for reconsideration [document no. 73] is denied. However, the Court also finds that this Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the [O]rder may materially advance the ultimate termination of the litigation ...[.]" *See* 28 U.S.C. § 1292(b). As such, the Court grants the Secretary the right to an expedited interlocutory appeal of this Order.

SO ORDERED.

---

**8.** The Court notes that the First Circuit recently declined an invitation to engage in judicial redrafting of a similarly complex and detailed statute. *See Campos v. Immigration and Naturalization Service*, 961 F.2d 309, 317 (1st Cir. 1992). The Court finds instructive the First Circuit's reluctance to engraft its predilections onto that statute. The Court reasoned: "Continued judicial redrafting simply insures that the statute will less and less be the recognizable *product of the legislative will.* We think a statute of this detailed nature is best left to the ministrations of Congress." *See id.*

**9.** The Court is not unmindful of the recent addition of § 1132(*l*)(1)(B) to the statute. Arguably, Congress presumed, in writing this provision, that a cause of action against non-fiduciaries already existed under § 1132. However, § 1132(*l*) does not *create* such a cause of action. Moreover, subsection 1 makes no explicit reference to non-fiduciaries. Thus, the Court is constrained again by the literal language of the statute. As such, it declines to read § 1132(*l*) as providing the vehicle with which to hold non-fiduciaries liable under the statute.

**10.** The Court notes that in a recent case dealing with the question of non-fiduciary liability in the context of ERISA preemption, a court concluded that Congress did not intend to hold non-fiduciaries liable under ERISA:

In order to carry out its goal of protecting employee benefit plans, their beneficiaries and their participants, Congress enacted § 1109. Because § 1109 is narrow regarding to whom and what it applies, it is apparent that Congress felt that regulating fiduciaries, those individuals who owe the highest standard of care to the plans and who have discretionary control over the assets of the plans, would provide adequate protection of employee benefit plans. Under § 1109, a fiduciary who breaches the high standard of care owed to the plan is personally liable to restore the plan to the position it would be in absent the breach of duty. The fact that ERISA is a comprehensive statute and yet does not provide a remedy for nonfiduciary misconduct is a good indication that Congress did not intend to regulate such behavior, but rather, that Congress believed regulation of fiduciary behavior would sufficiently protect benefit plans. Further support for this conclusion can be found in § 1109(b), which precludes liability for breaches of fiduciary duty occurring before becoming and after ceasing to be a fiduciary. If such a fiduciary cannot be liable, could Congress have intended for non-fiduciaries to be liable?

*Capital Mercury Shirt v. Employers Reinsurance Corp.*, 749 F.Supp. 926, 933 (W.D.Ark.1990) (quoting *So. California Meat Cutters Unions and Food Employers Pension Trust Fund v. Investors Research Co.*, 687 F.Supp. 506, 509 (C.D.Cal. 1988)).