I.B.E.W. LOCAL NO. 241 PENSION PLAN, and its Trustees, Arnold Dates, David Carr, Bill Emmons, Matthew Labosky, Thomas Stebbins, Jr., and Michael Talarski, by and on behalf of themselves, individually, and the I.B.E.W. Local No. 241 Pension Plan, Plaintiffs,

v.

FIRST ALLMERICA FINANCIAL LIFE INSURANCE CO. and DOES 10, Defendants,

First Allmerica Financial Life Insurance Co., Third–Party Plaintiff,

v.

Philip Kish, John Augustine, Jr., Daniel Brown, David Sutherland, Richard Green, David Hunter and Richard Roes 1–20, Third Party Defendants

No. 02–CV–0727.

United States District Court, N.D. New York.

Feb. 7, 2005.

Blitman & King, LLP (Gary A. Hall, Esq., James H. La Vaute, Esq., of Counsel), Syracuse, NY, for Plaintiff and Third Party Defendants.

Nixon Peabody, LLP (Margaret A. Clemens, Esq., of Counsel), Rochester, NY, for Defendant and Third Party Plaintiff.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

### BACKGROUND

Plaintiff I.B.E.W. Local No.241 Pension Plan ("the Plan or Fund") is a multi-employer, defined pension fund within the meaning of the Employment Retirement Income and Security Act ("ERISA"). The individual plaintiffs are the Plan's current Trustees and fiduciaries. The Plan gener-

ally pays an eligible participant monthly retirement benefits, or an annuity, based upon the participants credited service earned while working for certain employers signatory to collective bargaining agreement with the International Brotherhood of Electrical Workers Union No. 241. ("Union").

Plaintiff retained defendant First Allmerica Financial Life Insurance Co. ("Allmerica") in 1976, to render actuarial and record keeping services to the Plan, including mathematical determinations, based on approved actuarial cost methods and appropriate funding assumptions. Following the terms of the Plan as adopted by the Trustees, Allmerica disbursed and distributed assets from the Fund to participants and beneficiaries pursuant thereto. Allmerica had no discretion in performing its duties, but was directed to follow the directives of the Plan and the Trustees. In any situation in which Allmerica thought that the Plan was not clear, it would seek an interpretation from a Plan fiduciary to clear up the ambiguity.

The Plan relied upon Allmerica's expertise, skill and knowledge to calculate and distribute the lump sum benefits. Allmerica's technical proficiency was not probed proceeding any payments being made to plan participants. Plaintiff did check for obvious errors without recalculating the lump sum benefits or questioning the methods used by Allmerica in making its calculations.

In the mid 1980's, the Plan added a lump sum payment distribution option as an alternative to its annuity benefits. The dispute in this case centers on the correct method used in calculating the correct amount to be paid to employees opting to retire with the lump sum benefit.

Allmerica contends that at the time the lump sum retirement benefit became available to retiring employees, the Plan did not contain a restated document setting forth the method for computing the amount of the lump sum benefit payable to the retiring employee. In the absence of this document, Allmerica calculated the retirement amount based on Allmerica's standard procedures and rates for the purpose of reviewing the calculations with the Plan's Trustees and obtaining their approval thereof. Allmerica states that Walter Wolslegel, of Allmerica defined benefit group pension unit, spoke with Charles French, the Plan's Administrator, on two occasions in 1986 concerning the calculations, and French specifically agreed to the use of the early retirement factor and an immediate rate, and then authorized distribution of all pension funds. Allmerica then used the same method to compute the actual equivalent of the lump sum value of early retirement benefits for some other retiring employees because no new instructions were presented by Charles French.

Plaintiffs assert, however, that Allmerica wrongly computed the early lump sum retirement benefits to be made to six retiring Plan participants. The Plan required that lump sum distributions be computed as the actuarial equivalent of the normal retirement benefit. For the six early retirees it serviced, Allmerica computed the lump sum distribution as the actuarial equivalent of the early retirement benefit. This misapplication creates an inaccurate benefit amount because the early retirement benefits are subsidized to encourage the election of early retirement benefits. The Plan has early retirement annuities under actuarially more generous terms then the normal retirement annuities. Allmerica's use of the early retirement instead of the normal retirement accounts in its computations caused the six retiring participants to receive $268, 264.44 more in pension payments than permitted by the Plan.

As a result of Allmerica's conduct, the Plan has instituted this lawsuit alleging that Allmerica is a fiduciary under ERISA 29 U.S.C. § 1132, and that it breached its fiduciary duties by digressing from the terms of the Plan in its calculations of the lump sum value of the six individuals' early retirement benefits and disbursing overpayments to them totaling $268,264.44. The complaint also contains state law causes of action for breach of contract, actuarial malpractice and negligence. Recompense sought is compensatory and punitive damages, equitable relief attorney's fees and costs.

Allmerica is the Third Party Plaintiff in an action it commenced against the six recipients of the alleged $264,264.44 for indemnification and/or contribution for the full amount of any and all sums that may be adjudged against Allmerica resulting from the case at bar.

Currently before the court a motion by the Defendant and Third Party Plaintiff for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to this motion.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)(quoting Federal Rule of Civil Procedure 1). In determining whether there is

a genuine issue of material fact a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam* ). An issue of credibility is insufficient to preclude the granting of summary judgment. Neither side can rely on conclusory allegations or statements in affidavits. The disputed issue of fact must be supported by evidence that would allow a "rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsupported allegations will not suffice to create a triable issue of fact. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509.

*First Cause of Action—ERISA—Breach of Fiduciary Duty*

Although professional service providers are not normally considered to be fiduciaries when they render only routine professional services, their status may change if they "exercise discretionary authority or control over the plan's management or authority or control over its assets." *Mertens v. Hewitt Associates,* 948 F.2d 607, 610 (9th Cir.1991), aff'd, 508 U.S. 248, 113 S.Ct. 2063, 2066, 124 L.Ed.2d 161 (1993).

Enrolled actuaries are considered "professionals" under federal and state law. *Concrete Pipe and Products of California, Inc. .v. Construction Laborers Pension Trust for Southern California,* 508 U.S. 602, 632–35, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993)("actuaries are trained professionals" who take part in a "recognized professional discipline"), *Gereosa v. Savasta & Company,* 329 F.3d 317, 319 (2d

Cir.2003)("ERISA requires the administrator of each plan annually to obtain an 'actuarial statement,' which is in essence an analysis of the plan's financial condition by a professional actuary").

The definition of a "fiduciary" 29 U.S.C. § 1002(21)(A), states in relevant part: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." Determining fiduciary status requires examination of the function performed, "fiduciary status exists with an activity enumerated in the statute over which the entity exercises discretion or control." *Blatt v. Marshall & Lassman,* 812 F.2d 810, 812 (2d Cir.1987). Whether a professional service provider has or has not exercised such an unusual degree of influence over a plan as to become a fiduciary involves factual determinations. *Landry v. Air Line Pilots Association,* 901 F.2d 404, 418 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

In the instant case, Allmerica maintains that the use of its standard procedures and rates in making the calculation that caused the overpayment to six lump sum retirees, was justified because this procedure was agreed to by the Fund Administrator, Charles French. when he spoke on two occasions with Allmerica's Walter Wolslegel in October 1986, regarding these calculations. Therefore, its action cannot be considered the act of a fiduciary. ( Letter dated Oct. 18, 2001, from Allmerica's counsel Megan A. McCabe, Esq. to Union's counsel).

In Charles French's affidavit concerning this same incident, he states that he was the Fund Administrator at the time in question, that he had no authority to make decisions about the amount, type, or nature of benefits payable from the Fund; only the Fund's Board of Trustees could authorize or approve the use of early retirement factors or immediate rates in calculating lump sum and they did not do so; no representative from Allmerica or related entities request authorization from anyone at the Fund to use early retirement factors or immediate rates in calculating lump sum benefits; he did not talk to Walter Wolsegel on two occasions in October 1986, regarding the calculations of lump sum benefits, and did not agree with him about any proposed use of other methodologies for the calculation of lump sum benefits. (French Aff. p. 2).

Allmerica further claims that if their calculations were incorrect, it does not make it a fiduciary because the Trustees should have discovered this as part of the mandatory review of Allmerica' figures that is required under the ERISA "prudent man" statute 29 U.S.C. 1104(a)(1)(B). The Fund states that the Trustees were without expertise in actuarial techniques and, thus, unable to estimate the cumulative effect of actuarial methods. They relied on Allmerica's expertise in calculating and distributing lump sum retirement benefits, and checked Allmerica's for obvious errors. The miscalculations were only discovered when the Allmerica's actuarial successor brought it to the Trustee's attention.

It can readily be seen that the facts pertaining to these two critical issues are in sharp dispute, and the first cause of action cannot be resolved in a summary judgment motion.

Material issues of fact are also contained in the Fund's state law causes of action for Breach of Contract, Actuarial Malpractice and Negligence. The trial will necessarily include presentation of evidence bearing directly upon the state as well as the federal claims and both will be considered at that time.

The Plan's remaining cause of action, a federal law claim for attorney's fees under ERISA 29 U.S.C. § 1132(g)(1), will not be considered by the court at this time because it is premature, no decision on the merits of the case having yet been made.

Accordingly, Defendant and Third Party Plaintiff First Allmerica's motion for summary judgment is **DENIED**, and Plaintiff the Fund's motion for attorney's fees is **DISMISSED**, without prejudice.

**IT IS SO ORDERED.**