Rosemary REID, Plaintiff,

v.

GRUNTAL & CO., INC., Defendant and Third–Party Plaintiff,

v.

FIRST UNUM LIFE INSURANCE COMPANY, Third–Party Defendant.

No. 90–0062.

United States District Court, D. Maine.

May 17, 1991.

---

Peter J. DeTroy, Christopher C. Taintor, Norman Hanson & DeTroy, Portland, Me., for plaintiff.

Andrew J. Bernstein, G. Steven Rowe, Portland, Me., for First UNUM Life Ins. Co.

Rufus Brown, Drummond, Woodsum, Plimpton & MacMahon, Portland, Me., for Gruntal & Co.

## MEMORANDUM OF DECISION AND ORDER ON DEFENDANT GRUNTAL'S MOTION IN LIMINE

GENE CARTER, Chief Judge.

Defendant Gruntal & Co., Inc. (hereinafter Gruntal) moves to exclude all evidence regarding consequential damages which may be submitted by Plaintiff Rosemary Reid at trial. This motion *in limine* presents the question of whether the phrase "other appropriate equitable relief" contained in 29 U.S.C. section 1132(a)(3)(B) may be interpreted to permit the recovery of consequential damages under the Employee Retirement Income Security Act (hereinafter ERISA). 29 U.S.C. § 1001 *et seq.*

## I. THE STATUTORY FRAMEWORK

ERISA creates four different civil actions for participants and beneficiaries of employee benefit plans. 29 U.S.C. §§ 1132(a)(1)(A) and (B), 1132(a)(2), (3), and (4). Along with the other expressly enumerated actions not available to participants and beneficiaries,[1] these are the exclusive remedies for violations of ERISA. *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 3092–93, 87 L.Ed.2d 96 (1985). Only two types of ERISA civil actions are at issue in this case: those allowed by section 1132(a)(2) and section 1132(a)(3). These sections read in full:

§ 1132. Civil enforcement

(a) Persons empowered to bring a civil action.

A civil action may be brought ...

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409 [29 U.S.C. § 1109];

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan; ...

29 U.S.C. § 1132(a). Section 1109, which is expressly incorporated into section 1132(a)(2), reads, in pertinent part:

§ 1109. Liability for Breach of Fiduciary Duty

(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

29 U.S.C. § 1109(a).

### A. *Section 1132(a)(2) and Breach of Fiduciary Duty*

The Supreme Court has determined that section 1132(a)(2) does not permit the recovery of compensatory or punitive damages for breach of fiduciary duty claims. *Russell*, 473 U.S. at 144, 105 S.Ct. at 3091. Section 1132(a)(2) and section 1109 create a civil action holding personally liable any fiduciary of an employee benefit plan "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title...." 29 U.S.C. § 1109(a). Plaintiff's Complaint includes a claim, un-

---

1. Two bases for civil actions are available only to the Secretary of Labor. 29 U.S.C. § 1132(a)(5) and (6).

der ERISA, that Defendant Gruntal breached its fiduciary duty.

The fiduciary's "responsibilities, obligations, and duties" are enumerated in sections 1104 and 1106.[2] Section 1104 establishes a standard of loyalty which requires all fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan...." 29 U.S.C. § 1104(a)(1)(A). This section also establishes a standard of care which requires fiduciaries to discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use...." 29 U.S.C. § 1104(a)(1)(B).

Congress intended that courts look to the common law of trusts to define the general scope of fiduciaries' duties. *Central States Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985). However, Congress expressly identified and proscribed in section 1106 certain transactions involving the fiduciary and the employee benefit plan. 29 U.S.C. § 1106. The legislative history explains that participation by a fiduciary in any of these proscribed transactions would necessarily constitute a breach of the fiduciary's duty of loyalty. *See* S.Rep. No. 127, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4838, 4866 (1974) ("There follows [section 1104] a list of proscriptions which represent the most serious type of fiduciary misconduct which in one way or another has occurred in connection with some welfare or pension plan"). *See also Russell*, 473 U.S. at 143 n. 10, 105 S.Ct. at 3090 n. 10 ("ERISA establishes duties of loyalty and care for fiduciaries. With regard to loyalty, the principal provision is § 406 [29 U.S.C. § 1106], which in general prohibits self-dealing and sales or exchanges between the plan, on the one

hand, and 'parties in interest' and 'disqualified persons,' on the other hand.")

Section 1109 specifies three remedies for breaches of fiduciary duties: (1) the fiduciary makes good to such plan any losses to the plan resulting from such breach, (2) the fiduciary restores to such plan any profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and (3) "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a). The *Russell* Court read section 1109 to emphasize "the relationship between the fiduciary and the plan as an entity," rather than the direct relationship between the participant or beneficiary and the plan:

> Thus, not only is the relevant fiduciary relationship characterized at the outset as one "with respect to a plan," but the potential personal liability of the fiduciary is "to make good *to such plan* any losses *to the plan* ... and to restore *to such plan* any profits of such fiduciary which have been made through use of assets *of the plan....*"

473 U.S. at 140, 105 S.Ct. at 3089 (emphasis in *Russell* quotation). As a result, the *Russell* Court held that the phrase "other equitable or remedial relief" in section 1109 does not manifest a congressional intent to permit any relief except for the plan itself. The section 1109 remedies serve only to protect *the fund* from misconduct by fiduciaries. The "other equitable or remedial relief" authorized by section 1109 cannot, therefore, include the recovery of compensatory or punitive damages sought by the plaintiff in *Russell*.

Accordingly, Plaintiff Reid will not be able to recover damages under section 1132(a)(2) should she succeed on her breach of fiduciary duty claim.

### B.  Section 1132(a)(3) and Breach of Fiduciary Duty

The Court of Appeals for the First Circuit has held that compensatory and puni-

---

**2.** Section 1105 establishes liability for breaches by co-fiduciaries. 29 U.S.C. § 1105. Section 1108 authorizes the Secretary of Labor to create a mechanism by which exemptions may be given for activities which would otherwise be proscribed by section 1106. 29 U.S.C. § 1108.

tive damages are not available under section *1132(a)(3)* to redress claims for breach of fiduciary duty under ERISA. *Drinkwater v. Metropolitan Life Insurance Co.,* 846 F.2d 821, 824–25 (1st Cir.1988), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1989).[3] The damages claim discussed and disallowed by the First Circuit sought "compensatory and punitive damages pursuant to 29 U.S.C. § 1132(a)(3) for *breach of fiduciary duty* ... in that Metropolitan's acts constituted attempted interference with Drinkwater's 'attainment of his vested right to retirement.'" *Drinkwater,* 846 F.2d at 823 (emphasis added) (footnote omitted).[4]

*Russell* was expressly limited to breach of fiduciary duty claims brought under sections 1132(a)(2) and 1109. *See Russell,* 473 U.S. at 157, 105 S.Ct. at 3098 (Brennan, J., concurring). But the Supreme Court's interpretation of those provisions, permitting only equitable relief which protects the plan's fund from fiduciary duty breaches, requires reaching the same narrow interpretation of section 1132(a)(3) *when addressing breach of fiduciary duty claims.* If the "appropriate equitable relief" for breaches of fiduciary duties available under section 1132(a)(3) is broader than the "equitable or remedial relief as the court may deem appropriate" for breaches of fiduciary duties available under section 1132(a)(2), then section 1132(a)(2) would be completely unnecessary.[5] As the First Circuit has observed: "If there is a big hole in the fence for the big cat, need there be a small hole for the small one?" *Polaroid Corp. v. Commissioner of Internal Revenue,* 278 F.2d 148, 153 (1st Cir.1960).

Accordingly, the holding in *Drinkwater* prohibits Plaintiff Reid from recovering any damages under section 1132(a)(3) should she succeed on her breach of fiduciary duty claim. The holding in *Drinkwater* left open the question of whether additional remedies would be available under section 1132(a)(3) for claims other than breach of fiduciary duty.[6] The First Cir-

---

**3.** None of the cases cited to the Court, including *Drinkwater,* addressed the question of the availability of consequential damages under section 1132(a)(3). Each case is distinguishable, either because it involved claims for punitive damages, compensatory damages for emotional distress claims not available under section 1132(a)(3), or both. *See Amos v. Blue Cross–Blue Shield,* 868 F.2d 430, 431 (11th Cir.) *(dictum* discussing "extracontractual damages," holding that no punitive damages are available), *cert. denied,* — U.S. —, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989); *Kleinhans v. Lisle Savings Profit Sharing Trust,* 810 F.2d 618, 626–27 (7th Cir.1987) (punitive damages); *Sokol v. Bernstein,* 803 F.2d 532, 534–38 (9th Cir.1986) (compensatory damages for emotional distress); *Sommers Drug Stores v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1462–65 (5th Cir.1986) (punitive damages), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); *Powell v. Chesapeake & Potomac Telephone Co.,* 780 F.2d 419, 424 (4th Cir.1985) (punitive damages and compensatory damages for emotional distress), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986); *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1216–17 (8th Cir.) *(dictum* discussing punitive damages), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). Thus, this Court is neither required by binding precedent nor encouraged by persuasive authority to refrain from inferring from section 1132(a)(3) that other forms of damages constitute "appropriate equitable relief."

**4.** Drinkwater's claim appeared to have a tort element, as evidenced by the First Circuit's later description of the plaintiff's claim: "Richard Drinkwater has asserted his entitlement to relief based on Metropolitan's *bad faith and malicious conduct in misrepresenting* benefits due Drinkwater and in attempting to constructively discharge him, all in violation of Metropolitan's fiduciary duty under ERISA." *Drinkwater,* 846 F.2d at 824 (emphasis added).

**5.** The Court of Appeals for the Sixth Circuit held in *Warren v. Society National Bank,* 905 F.2d 975, 981–82 (6th Cir.1990), that the authorization in section 1132(a)(3) of "other appropriate equitable relief" includes the availability of monetary damages for breaches of fiduciary duties. The *Warren* court adopted the reasoning in Justice Brennan's concurrence in *Russell.* Nonetheless, the *Warren* court's opinion is directly in conflict with the holding of the First Circuit in *Drinkwater. See Warren,* 905 F.2d at 979–80 (distinguishing *Drinkwater's dictum* on "extracontractual" damages).

**6.** The Court previously stated, while discussing Plaintiff's breach of fiduciary duty claim, that "the law of this circuit ... is that *extracontractual* damages (*i.e.,* compensatory and punitive damages) are not available under section 1132(a)(3)." *Memorandum of Decision and Order on Defendant Gruntal's Motion to Dismiss* at 16 (Docket No. 19) (emphasis in original). This assessment clearly related only to breach of

cuit opined in *dictum,* however, that no "extracontractual damages" are available under section 1132(a)(3) in any circumstances. *Drinkwater,* 846 F.2d at 824–25. The First Circuit's *Drinkwater* opinion suggests that the only "other appropriate equitable relief" available under section 1132(a)(3) is the same "equitable or remedial relief" which is available under section 1132(a)(2): " '[o]ther appropriate equitable relief' should be interpreted to mean what it says—declaratory or injunctive relief...." *Id.* at 824 (quoting *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir.1986)).[7]

Thus, the question herein is whether the *Drinkwater dictum* should be followed and Plaintiff prohibited from recovering damages should she succeed on her promissory estoppel claim. If Plaintiff is prohibited from recovering damages, then this motion *in limine* would have to be granted.

**C.** *Section 1132(a)(3) and Claims Other Than Breach of Fiduciary Duty*

The starting place for any effort to interpret the "carefully integrated civil enforcement provisions" of ERISA, *Russell,* 473 U.S. at 146, 105 S.Ct. at 3092, is the fundamental tenet of statutory construction that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." 2A *Sutherland Statutory Construction* § 46.06 (4th Ed.1984). The application of this principle to ERISA yields the conclusion that section 1132(a)(3) cannot be coextensive with the other express remedies provided in section 1132. Section 1132(a)(3) may include the civil remedies provided by the other provisions; however, Congress must also have intended that section 1132(a)(3) would provide to participants and beneficiaries something different from the relief provided by sections 1132(a)(1) and 1132(a)(2). Any other interpretation of

the statute would consign the phrase "other appropriate equitable relief" in section 1132(a)(3) to the status of mere surplusage.

For example, Congress clearly did not intend section 1132(a)(3) to include only an authorization for civil actions to collect those benefits to which a participant or beneficiary is entitled under the terms of his or her plan. Section 1132(a)(1) expressly provides for just such an action in clear and unambiguous terms. 29 U.S.C. § 1132(a)(1)(B). Thus, Section 1132(a)(3) must provide for something other than these contractually defined benefits.

Similarly, section 1132(a)(3) must do more than provide the same remedies for breach of fiduciary duty as does section 1132(a)(2). Participants and beneficiaries are already entitled under sections 1132(a)(2) and 1109 to "such other equitable or remedial relief as the court may deem appropriate...." for breaches of fiduciary duties. This relief includes declaratory or injunctive relief, removal of the fiduciary, or the imposition of a constructive trust. If the authorization of "other appropriate equitable relief" in section 1132(a)(3) merely duplicates the relief provided by sections 1132(a)(2) and 1109, then Congress included in section 1132(a) an empty and meaningless waste of verbiage. Since interpreting courts are required to respect and give effect to all of the provisions contained in the enactments of our coequal branch, this interpretation of section 1132(a)(3) must fail.

*Drinkwater*'s equation of the remedies authorized by section 1132(a)(3) with those authorized by section 1132(a)(2) is the product of the Ninth Circuit's misapplication of ERISA's legislative history. Every section of every committee report relied upon in *Sokol v. Bernstein,* 803 F.2d 532 (9th Cir. 1986), the case which served as the foundation for *Drinkwater,* focuses exclusively and expressly on *breaches of fiduciary duties,* particularly the enumerated pro-

---

fiduciary duty claims, and not to other claims which may be available pursuant to section 1132(a)(3).

**7.** This Court has previously held that this *dictum* in *Drinkwater* did not preclude the avail-

ability of constructive trust remedies under section 1132(a)(3). *See Memorandum of Decision and Order on Defendant Gruntal's Motion to Dismiss* at 14–17.

scribed transactions in section 1106. *See* S.Rep. No. 383, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4890, 4988 (1974) ("the bill specifically makes a fiduciary who breaches any of the specified duties personally liable...."); H.R.Conf.Rep. No. 1280, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S. Code Cong. & Admin.News 5038, 5100 (1974) ("a fiduciary who breaches the fiduciary requirements of the bill is to be personally liable for any losses...."); S.Rep. No. 383, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4890, 4989 (1974) (referring specifically to remedies for breaches of fiduciary duties). As already noted above, breaches of fiduciary duties are actionable and remediable *under sections 1132(a)(2) and 1109.* This legislative history, with its express references to fiduciary duty, manifests a congressional intent to define narrowly only the equitable remedies *available under sections 1132(a)(2) and 1109.* Yet, the Ninth Circuit, and by reference the First Circuit, both used this legislative history to give a very narrow interpretation to *section 1132(a)(3).*[8]

"Other appropriate equitable relief" is, on its face, very broad and intentionally ambiguous:

> The enforcement provisions have been designed specifically to provide both the Secretary and participants and beneficiaries with *broad remedies for redressing or preventing* violations of the Act. The intent of the Committee is to provide *the full range of legal and equitable remedies available in both state and federal courts* and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibil-

ities under state law for recovery of benefits due to participants.

H.Rep. No. 533, 93rd Cong., 2nd Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4655 (1974) (emphasis added).[9] The First Circuit has directed adherence to the principle that "when Congress uses broad generalized language in a remedial statute, and that language is not contravened by authoritative legislative history, a court should interpret the provision generously so as to effectuate the important congressional goals." *Cia Petrolera Caribe, Inc. v. Arco Caribbean, Inc.,* 754 F.2d 404, 428 (1st Cir.1985) (footnote omitted). Thus, general interpretive practice and the legislative history of ERISA should encourage a broad construction of section 1132(a)(3).

## II. EQUITABLE REMEDIES FOR PROMISSORY ESTOPPEL

### A. "Appropriate" Remedies

The challenge of section 1132(a)(3) is to ascertain how that provision is different from the other remedial provisions of section 1132(a). The plain language suggests that a principal difference between section 1132(a)(2) and section 1132(a)(3). is the creation by section 1132(a)(3) of causes of action to remedy conduct which would not constitute breaches of fiduciary duty actionable under sections 1132(a)(2) and 1109. Section 1132(a)(3) establishes a cause of action for the redress of *"any* action or practice which violates *any* provision of this title or the terms of the plan...." 29 U.S.C. § 1132(a)(3) (emphasis added). Section 1132(a)(2), by incorporating section 1109, creates causes of action only against "a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon

---

**8.** This misreading of ERISA's legislative history calls to mind a warning issued by Chief Judge Patricia Wald: "citing legislative history is still ... akin to 'looking over a crowd and picking out your friends.'" Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term,* 68 Iowa L.Rev. 195 (1983).

**9.** The Supreme Court refused to rely on this segment of the legislative history because the

reference to "legal remedies" was excluded from the bill which eventually became law. *Russell,* 473 U.S. at 146, 105 S.Ct. at 3092. There is no reason to believe, however, that the deletion of a reference to "legal remedies" reflected a congressional intent to narrow the spectrum of available *equitable remedies.* And there is no reason to disbelieve this expression of Congress's intent to incorporate a broad array of remedies within the language of section 1132.

fiduciaries...." 29 U.S.C. § 1109. Clearly, ERISA's drafters intended section 1132(a)(3) to reach beyond the breaches of fiduciary duty actionable under sections 1132(a)(2) and 1109 to authorize civil actions to redress other violations of ERISA.

Included among the causes of action permitted under section 1132(a)(3) are claims of promissory estoppel. *See Cleary v. Graphic Communications International Union,* 841 F.2d 444 (1st Cir.1988); *Memorandum of Decision and Order on Defendant Gruntal's Motion to Dismiss* at 10–14 (Docket No. 39). *See also Black v. TIC Investment Corp.,* 900 F.2d 112, 115 (7th Cir.1990); *Davidian v. Southern California Meat Cutters Union,* 859 F.2d 134, 136 (9th Cir.1988). Promissory estoppel claims arise under the federal common law of rights and obligations which Congress intended the courts to develop around ERISA. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). These equitable claims are, of course, substantively different from the breach of fiduciary duty claims authorized by section 1132(a)(2); therefore, they may require different remedies to effectuate appropriate relief.

The structure of section 1132(a) indicates that Congress intended the phrase "appropriate equitable relief" to provide *different equitable remedies for different violations.* The plain language of the statute manifests Congress's intent to have courts craft remedies which are "appropriate" to the violations being remedied:

(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) *to redress such violations* or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added).

Any person who is a fiduciary ... shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and

shall be subject *to such other equitable or remedial relief as the court may deem appropriate,* including removal of the fiduciary.

29 U.S.C. § 1109 (emphasis added). Breaches of fiduciary duties, including the enumerated proscribed transactions, imperil the actuarial soundness of the plan; therefore, the appropriate remedies for such violations must guarantee the integrity of the plan. Promissory estoppel claims involve violations which directly disadvantage a participant or beneficiary without necessarily threatening the actuarial soundness of the plan. Employing remedies for estoppel claims which would protect only the plan would not usually afford appropriate redress for the claimed violation. Thus, the broad language of section 1132(a)(3) demonstrates that Congress intended to provide courts with a wide array of equitable remedies for violations, including promissory estoppel, which are actionable under section 1132(a)(3).

### B. "Appropriate" Remedies for Promissory Estoppel

■ The final question which must be addressed is what types of equitable remedies are appropriate to redress promissory estoppel claims. As noted above, Congress intended courts to turn to trust law principles for defining rights and obligations under the ERISA enforcement scheme. *See Russell,* 473 U.S. at 156–57, 105 S.Ct. at 3097–98 (Brennan, J., concurring). The Restatement (Second) of Trusts defines the remedies available under trust law as follows:

If the trustee commits a breach of trust, the beneficiary may have the option of pursuing a remedy which will put him in the position in which he was before the trustee committed the breach of trust; or of pursuing a remedy which will give him any profit which the trustee has made by committing the breach of trust; or of pursuing a remedy which will put him in the position in which he would have been if the trustee had not committed the breach of trust.

Restatement (Second) of Trusts, § 205, *comment a.* This is consistent with the

remedies ordinarily provided for promissory estoppel claims. The remedy for a common law claim of promissory estoppel may include both expectation damages and reliance damages, but "reliance damages would appear to be the minimum remedy appropriate in order to avoid the injustice from lack of any enforcement at all." C. Knapp, *Commercial Damages: A Guide to Remedies in Business Litigation* at ¶ 2.05[3] (1990). Reliance damages "put the plaintiff back in the position the plaintiff would have occupied had the reliance not taken place." *Id.* at ¶ 2.02. These reliance damages may include consequential damages, which are defined as "costs incurred after the breach in an attempt to avoid loss whether or not the attempt is successful." *Id.* at ¶ 1.03[2][ii].

While the Court expresses no opinion on the propriety of awarding consequential damages on the facts of this case, the foregoing analysis of section 1132(a) makes clear that consequential damages are available pursuant to the authorization in section 1132(a)(3)(B)(i) of "other appropriate equitable relief."

Accordingly, the Court hereby DENIES the motion *in limine* made by Defendant Gruntal.

So ORDERED.