Gertrude Elisabeth KEMP

v.

CONTROL DATA CORPORATION, et al.

Civ. No. JFM–91–1744.

United States District Court, D. Maryland.

Nov. 25, 1991.

---

Barbara Kraft, Washington, D.C., for plaintiff.

C. Michael Deese, Washington, D.C., for defendants.

## MEMORANDUM

MOTZ, District Judge.

In this action Gertrude Elisabeth Kemp alleges that her former employer, Control Data Corporation ("CDC"), wrongfully terminated disability benefits which she was receiving and failed to afford her the opportunity to participate in two programs which it maintained for injured employees. She asserts two claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and one claim for breach of contract. She has named Northwestern Life Insurance Company ("NWNL"), the claims administrator for CDC's long-term disability plan, as a defendant on the ERISA claims. Defendants have moved to dismiss all three claims.

### I.

Plaintiff was employed by CDC in January 1984 as an instructor to train medical-administrative assistants in anatomy and physiology, office procedure, medical terminology, basic clinic practice and dictaphone transcription at CDC's Medix School in Sil-ver Spring, Maryland.[1] On May 23, 1985, while driving to work, she was involved in an automobile accident in which she suffered serious injuries. For the next three years plaintiff did not return to work (except for a brief period during March 1986 when she worked part-time). She remained to be a CDC employee during these three years and received first short-term and then long-term disability benefits under CDC's disability plan.

On March 29, 1988, pursuant to a directive from NWNL, plaintiff was examined by a doctor of NWNL's choice. Several days thereafter, on April 7, 1988, NWNL wrote plaintiff to advise her that her benefits would terminate in thirty days. On May 7, 1988, her benefits were, in fact, terminated. After a series of appeals, CDC finally denied her claim for continued benefits on November 29, 1988.

### II.

Plaintiff's first claim is asserted against CDC and NWNL for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). This claim is effectively foreclosed by the Supreme Court's decision in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). There, the plaintiff brought an action against the administrator of an ERISA plan for punitive damages and consequential damages allegedly resulting from a wrongful delay in the granting of benefits to her. She contended that defendant was liable under 29 U.S.C. § 1109(a), for having breached its fiduciary duty, and brought her action under 29 U.S.C. § 1132(a)(2) which authorizes a beneficiary to bring an action against a fiduciary who has violated § 1109(a).

The Court held that § 1109(a) does not establish a fiduciary's liability to a beneficiary for punitive damages or for extracontractual compensatory damages caused by the improper or untimely processing of benefit claims. In so ruling the Court found that § 1109(a) is only intended to

---

1. The facts as set forth in this memorandum are as alleged by plaintiff in her amended com-plaint.

provide a remedy for the plan itself in the event that a fiduciary improperly manages the assets of the plan or otherwise breaches the duties which he owes to the plan. Thus, while a beneficiary of the plan may bring an action for breach of fiduciary duty under § 1132(a)(3), he may seek recovery only for a violation of § 1109(a) which "inures to the benefit of the plan as a whole." 473 U.S. at 140, 105 S.Ct. at 3089.

In a footnote the court expressly reserved ruling on the question of whether § 1132(a)(3), the section upon which plaintiff relies,[2] authorizes recovery of individual extracontractual damages by a beneficiary of the plan. 473 U.S. at 139 n. 5, 105 S.Ct. at 3088 n. 5. This footnote is somewhat perplexing since § 1132(a)(3) is merely an enforcement provision and does not appear to create any substantive right. In any event, as recently noted in *Reid v. Gruntal & Co.*, 763 F.Supp. 672 (D.Me. 1991), § 1132(a)(3) cannot be sensibly construed as authorizing broader relief as to breach of fiduciary claims than does § 1109(a) because, if it were so construed, it would render entirely nugatory § 1132(a)(2) which authorizes a civil action to be brought for a violation of § 1109(a).

## III.

■ Defendants have moved to dismiss plaintiff's claim for wrongful termination of benefits on the ground that it is barred by limitations. Maryland's three year limitation statute applies to the claim. *See Dameron v. Sinai Hospital of Baltimore, Inc.*, 815 F.2d 975 (4th Cir.1987).

Several dates are relevant to the limitations question. NWNL first advised plaintiff on April 7, 1988 that her benefits would terminate in thirty days. On May 7, 1988, the benefits were terminated. On June 10, 1988, plaintiff's attorney requested that NWNL review its decision. On August 12, 1988, NWNL upheld its decision to termi-

nate benefits. On August 22, 1988 plaintiff appealed this decision to CDC. On November 29, 1988 CDC denied the appeal. This action was instituted on May 6, 1991.

In *Dameron v. Sinai Hospital of Baltimore, Inc.*, 595 F.Supp. 1404, 1415 (D.Md. 1984), *aff'd in part and rev'd in part*, 815 F.2d 975 (4th Cir.1987), Judge James Miller of this Court held that limitations in an ERISA action begin to run on "the date that beneficiary was notified of the reconsideration decision." On appeal, the Fourth Circuit was somewhat more elliptical, indicating that the limitation period began to run when plaintiff was "on notice that she should pursue her rights under ERISA." However, the Fourth Circuit did not expressly reject or disavow the test enunciated by Judge Miller. Moreover, the event which the Court found to trigger the commencement of the limitations period was the same event that Judge Miller had found to trigger the limitations period: a June 1988 notice to plaintiff denying her appeal of a November 1979 decision denying her benefits.

I have concluded that sound public policy dictates adoption of Judge Miller's bright-line rule. The internal appeals process, which is mandated by 29 U.S.C. § 1133, is an essential element of the ERISA scheme. Utilization of that process is to be encouraged, both to assure the orderly and considered review of benefits decisions by the plan's fiduciaries and to prevent the federal courts from being flooded with ERISA litigation. Therefore, limitations should not be deemed to have begun to run until the internal appeals process has been exhausted. *See Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1206 (10th Cir.1990) ("[E]xhaustion of administrative (i.e., company-or plan-provided) remedies is an implicit prerequisite to seeking judicial relief"). In this case that did not occur

**2.** It should perhaps be noted that in her opposition memorandum plaintiff has represented that she is not seeking any extracontractual damages under her breach of fiduciary claim. Of course, to the extent that this means that she is only seeking to recover the benefits to which she is allegedly entitled under the plan itself, her

breach of fiduciary claim is merely redundant to her direct claim for alleged wrongful termination of benefits. However, it may be that plaintiff is seeking to recover punitive damages as to her breach of fiduciary duty claim. In that event, a consideration of the viability of the breach of fiduciary claim is required.

before November 29, 1988, when CDC denied plaintiff's final appeal.[3]

## IV.

 Plaintiff's final claim is that CDC allegedly committed a breach of contract by failing to afford her the opportunity to participate in a "Return To Work" program and a "Rehabilitation Employment" program which it maintained and described in its booklet entitled "Disability Income Protection." CDC has moved to dismiss this claim on the ground that the two programs in question are part of its ERISA disability plan and that any common law cause of action for breach of contract is therefore preempted by ERISA.

The "Return To Work" program is clearly not part of CDC's ERISA plan. By its own terms it applies to employees who have been medically released and who are no longer disabled. It is less clear whether the "Rehabilitation Employment" program is part of CDC's ERISA plan. That program, in effect, permits an employee who is medically capable of performing some degree of work to return to part-time or less strenuous work during her period of rehabilitation. During this period she is to be paid wages commensurate with the job which she is doing and to receive a "rehabilitation benefit" constituting a percentage of the difference between her regular wages and the wages earned while on rehabilitation.

Since the source of the wages to be paid appears to be CDC's general payroll, not a fund which is part of the ERISA plan, it may be that the Rehabilitation Employment program is free and independent of the ERISA plan. On the other hand, since it appears that the source of the rehabilitation benefit to be paid may be the ERISA plan and since the determination of whether an employee is capable of working while on rehabilitation is closely related to the question of whether she is disabled, it may be that the program is part of CDC's ERISA plan. These issues can be further considered after discovery has been con-

ducted and a factual record developed. At the same time a factual record can also be developed on the question of whether on the merits plaintiff has a viable claim either in connection with the Return To Work program or the Rehabilitation Employment program. Any such claim seems somewhat dubious in light of the fact that plaintiff apparently never requested to participate in either program and, in fact, was taking the position throughout the period from the time of the accident to the date of the termination of her benefits that she was medically unable to return to work.

A separate order effecting the rulings made in this memorandum is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 25th day of November 1991

ORDERED

1. Defendants' motion to dismiss Count I of the Amended Complaint is granted;

2. Defendants' motion to dismiss Count II of the Amended Complaint is denied; and

3. Defendant Control Data Corporation's motion to dismiss Count III of the Amended Complaint is denied.

---

3. This holding is premised upon the fact that plaintiff's internal appeal was timely. A different case would be presented if the appeal were untimely since a limitation rule should not be adopted which opens the door for the prosecution of stale claims.