Richard A. KROSCHINSKY, Jr.

v.

The TRUSTEES OF STEAMSHIP TRADE ASSOCIATION/INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION TRUST FUND–BENEFITS TRUST FUND, et al.

Civ. No. JFM–91–1928.

United States District Court,
D. Maryland.

Feb. 11, 1992.

Stephen R. Layton, Layton & Muskin, Stevensville, Md., for plaintiff.

Paul B. Lang, Niles, Barton & Wilmer, Baltimore, Md. and Anthony Abato, Jr., Lutherville, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

Richard A. Kroschinsky, Jr. has brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et. seq. ("ERISA"), against the Steamship Trade Association of Baltimore/International Longshoremen's Association Pension Trust Fund (the "Pension Fund") and the Steamship Trade Association of Baltimore/International Longshoremen's Association Benefits Trust Fund (the "Benefits Fund") (collectively "defendants") seeking recovery of $12,000 in benefits allegedly due him in connection with a work-related injury. Specifically, Kroschinsky alleges that officials of the Benefits Fund, in determining his eligibility for benefits, denied him credit for vacation and holiday hours earned during the period of his disability and that as a consequence, he suffered a downgrade in benefits status. Defendants have moved for summary judgment.

### I.

Since 1974 Kroschinsky has been employed as a longshoreman by the Baltimore Stevedoring Co., a member of the Steamship Trade Association of Baltimore (the "STA"), pursuant to successive collective bargaining agreements between the STA and the International Longshoremen's Association (the "ILA"). During his employment, Kroschinsky has participated in and contributed to both the Benefits Fund and the Pension Fund established by the STA and the ILA. On November 30, 1983, Kroschinsky suffered an injury to his left knee while working at Locust Point. The injury left him temporarily disabled and prevented him from working during most of the contract year (October 1, 1983—September 30, 1984) established by the collective bargaining agreement ("CBA") then in effect.

The Benefits Fund allocates benefits according to a worker's "insured group" designation: Group A workers are entitled to a more extensive package of benefits than Group B workers. An employee's benefits status for a given contract year depends, at least in part, on the number of hours credited to the employee during the prior contract year. In order to maintain Group A status, an employee must have received credit for 1100 hours during the prior year. The number of hours earned roughly corresponds to the number of hours worked during that year. However, special provision is made for disabled employees: during the period of disability, an employee receives credit at a predetermined, flat rate, which on an annual basis would allow the employee to maintain the group status he held at the time of injury. For employees who are Group A workers this rate is 22 hours per week.

From 1974 through 1984, Kroschinsky qualified for Group A benefits. As a result of his injury, however, Kroschinsky received only 1087 hours of credit for the 1983–84 contract year, 13 fewer than he needed to retain Group A status. This was so because although he was given credit at the rate of 22 hours per week for the period from December 1, 1983 (the day after his injury) through September 30, 1984 (the last day of the contract year)—resulting in a total credit of 962 hours—he had worked only 125 hours prior to December 1, 1983 during the 1983–84 contract year.

## II.

■ As a threshold matter, it is clear that whatever the merit of Kroschinsky's claim against the Benefits Fund may be, the Pension Fund is entitled to summary judgment on the ground that it is not a proper party defendant. The two Funds are separate entities with distinct functions: the Pension Fund provides retirement income and the Benefits Fund provides medical and disability benefits.

Kroschinsky seeks to recover only the latter.[1]

## III.

Defendants assert that Kroschinsky's claim is time-barred. The pertinent facts relating to this defense are as follows: (1) Kroschinsky was advised shortly after December 10, 1984, of his change in coverage from Group A to Group B; (2) under the terms of the Plan he had 60 days in which to file an appeal from this decision; (3) he filed his appeal on or about April 25, 1988; (4) the trustees denied his appeal on the merits on June 24, 1988 and advised him of that decision by a letter dated July 8, 1988; (5) he received the trustees' letter on July 11, 1988; and (6) this suit was filed on July 10, 1991.

■ Maryland's three-year limitation period for contract actions applies to actions for wrongful denial of employee benefits brought under 29 U.S.C. § 1132(a)(1). *See Dameron v. Sinai Hosp.*, 815 F.2d 975, 981 (4th Cir.1987); Md.Cts. & Jud.Proc. Code Ann. § 5–101. Ordinarily the limitations period does not begin to run until the plaintiff has exhausted all remedies under the Plan's internal appeals process and been notified of the final decision denying the benefits claim. *See, e.g., Dameron v. Sinai Hosp.*, 595 F.Supp. 1404, 1415 (D.Md. 1984), *aff'd in part and rev'd in part*, 815 F.2d 975 (4th Cir.1987); *Kemp v. Control Data Corp.*, 785 F.Supp. 74 (D.Md.1991). What the case law does not yet make clear is whether "notification" to the plaintiff occurs when notice is sent or when it is received by the plaintiff.

■ The facts of the present case might seem to raise that issue squarely since the date of the letter notifying Kroschinsky of the denial of his appeal was July 8, 1988, the date of Kroschinsky's receipt of the letter was July 11, 1988 and the date that this suit was filed was July 10, 1991. However, the fact which I find to be dispositive

---

**1.** The only fact upon which Kroschinsky relies to support his joinder of the Pension Fund is that the two Funds share a single letterhead. His position is self-evidently frivolous. Aside

from the fact that the mere sharing of a letterhead hardly provides a basis for piercing the corporate veil, the letterhead in fact identifies the two Funds as separate entities.

is that Kroschinsky's internal appeal to the trustees was itself untimely. As stated above, under the terms of the Plan he had sixty days in which to file his appeal, and he, in fact, filed it more than three years after he was first notified of the decision to deny him Group A benefits. To hold that this untimely appeal was sufficient to toll limitations would be to invite the prosecution of stale claims. *See Kemp, supra,* at n. 3.[2]

## IV.

Although I have ruled that Kroschinsky's claim is time-barred, I will nevertheless address the merits of his claim in the event that my ruling as to limitations is reversed on appeal.

## A.

■ In an action for benefits allegedly due under ERISA, the standard of judicial review depends upon whether the plan at issue "vests in its administrators discretion either to settle disputed eligibility questions or to construe 'doubtful provisions' of the plan itself." *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1186 (4th Cir.1989) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111–12, 109 S.Ct. 948, 954–55, 103 L.Ed.2d 80 (1989)). If the plan administrators enjoy such authority, the court "may disturb the challenged denial of benefits only upon a showing of procedural or substantive abuse." Otherwise their decisions are reviewed de novo. *de Nobel,* 885 F.2d at 1186; *see also Boyd v. UMW Health & Retirement Funds,* 873 F.2d 57, 59 (4th Cir.1989).

■ The natural place to look for evidence of the plan administrators' discretionary powers is the document under which they act. *See, e.g., Bruch,* 489 U.S. at 111, 109 S.Ct. at 954. Here, the Benefits Fund was established by an Agreement and Declaration of Trust between the STA and the ILA, effective January 1, 1976 (the "Trust Agreement"). The Trust Agreement endows the trustees with broad power to interpret the agreement and administer the Benefits Fund. Pursuant to § 4.05, the trustees have the power to construe the provisions of the agreement; their construction is binding on employees and beneficiaries subject to the appeals procedures set out in the Trust Agreement. Section 6.01 gives the trustees "full authority to determine all questions of the nature, amount and duration of benefits to be provided." The trustees, pursuant to § 6.03, also have "full authority to determine eligibility requirements for benefits" which shall be binding upon employees. The breadth of the trustees' discretion under these provisions entitles the Benefits Fund to a deferential standard of review with respect to its determination of Kroschinsky's benefits status. *See de Nobel,* 885 F.2d at 1186–87.

## B.

■ As stated above, the thrust of Kroschinsky's complaint is that he lost eligibility for Group A benefits status because the Benefits Fund wrongfully denied him credit for vacation and holiday hours earned during his disability. There is language in the Summary Plan Description which at first blush may appear to support his position.[3] One sentence states that employees,

---

**2.** I recognize that it could be reasoned that the trustees waived the untimeliness of Kroschinsky's appeal by denying his claim on its merits. However, it hardly seems to be in the public interest to establish a rule which would discourage trustees of ERISA plans from considering untimely appeals on their merits. Furthermore, it would unduly complicate the law to engraft a waiver exception to the untimely appeal exception to the generally applicable limitations commencement rule.

**3.** Defendants have not filed an actual copy of the Benefits Plan promulgated by the trustees but instead have filed relevant excerpts from the

Summary Plan Description. 29 U.S.C. § 1022(b) mandates that a summary plan description of an ERISA plan be distributed to covered employees. Because of this statutory requirement and employees' presumed reliance on the plan summary, the Summary Plan Description would likely govern the dispute over Kroschinsky's benefits status if there were a conflict between its terms and the actual Benefits Plan. *See Heidgerd v. Olin Corp.,* 906 F.2d 903 (2d Cir.1990); *Edwards v. State Farm Mut. Auto Ins. Co.,* 851 F.2d 134 (6th Cir.1988); *McKnight v. Southern Life & Health Ins. Co.,* 758

like Kroschinsky, who work for an STA member in work covered by the CBA will receive "credit for the number of hours *for which wages are calculated.*" (Emphasis added.) Arguably, under the provision an employee's benefits status should reflect vacation and holiday pay. However, elsewhere the Summary Plan Description specifically provides a different method for calculating credit during periods of disability. An employee qualified to receive Group A benefits at the time of injury or sickness will receive "credit for 22 hours per week, up to a maximum of 1100 hours per contract year while ... being paid Worker's Compensation for temporary total disability." No mention is made of any vacation or holiday credit. Thus, in not giving Kroschinsky any vacation or holiday credit the trustees were interpreting the Plan in accordance with its literal terms. This cannot be said to constitute an abuse of discretion.

Kroschinsky further contends, however, that the trustees' interpretation of the eligibility requirements bring them into conflict with the Trust Agreement pursuant to which the Plan was established. Section 4.02 of the Trust Agreement does place one constraint on the Trustees' discretion: they must exercise their power to establish rules for the administration of the Plan consistent with the CBA. Pointing out that Section 9(c)(1) of the CBA contains a formula for the calculation of vacation pay during periods of disability, Kroschinsky argues that the trustees' failure to give him a vacation credit in determining his eligibility for disability benefits contradicts that formula. The flaw in this argument is that Kroschinsky conflates two independent determinations: the amount of vacation pay due an employee under the CBA and the employee's benefits status under the Benefits Plan. Although it is true that Section

9 of the CBA dictates the amount of vacation pay an employee should receive for the purposes of wage compensation, the CBA is completely silent as to whether such pay must be considered in determining an employee's eligibility for benefits.

■■■ Kroschinsky further contends that even if the eligibility requirements were consistent with the Trustees Agreement and the CBA, they are inconsistent with a governing Department of Labor regulation. In this regard he relies upon a letter addressed to Anthony Abato, co-counsel to the Benefits Review Committee, from a law firm. The letter advises Abato concerning the extent to which 29 C.F.R. § 2530.200b–2 requires that hours for which no duties are performed—vacation, holiday, illness—must be counted for the purpose of vesting and accrual under *pension* plans governed by ERISA. Kroschinsky contends that the fact that the Benefits Fund ignored this advice suggests that the eligibility requirements are unreasonable. Of course, the adoption of eligibility requirements at odds with the substantive requirements of ERISA would necessarily constitute an abuse of discretion. *See Cotter v. Eastern Conf. of Teamsters Retirement Plan*, 898 F.2d 424, 427–28 (4th Cir. 1989); *de Nobel*, 885 F.2d at 1188 (citing *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1353 (9th Cir.1984)). However, the flaw in Kroschinsky's argument is that the cited regulations apply only to pension plans, not plans providing medical benefits. 29 C.F.R. § 2530.200b–2 defines an "hour of service" under ERISA's minimum standards for pension plan participation, 29 U.S.C. § 1052. Moreover, 29 U.S.C. § 1051(1) expressly exempts "employee welfare benefit plan[s]" like the Benefits Fund from the participation and vesting requirements set out in §§ 1052–53.[4] *See*

---

F.2d 1566 (11th Cir.1985); *but see Hamilton v. Travelers Ins. Co.*, 752 F.2d 1350 (8th Cir.1985).

**4.** ERISA defines an "employee welfare benefit plan" and "welfare plan" as "any plan, fund or program" established for the purpose of providing, inter alia, "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1). In contrast,

an "employee pension benefit plan" or "pension plan" means "any plan, fund or program" that provides retirement income or results in deferral of income until the termination of employment. 29 U.S.C. § 1002(2)(A). Clearly, the Benefits Fund falls under the former rather than the latter definition. Additionally, even if, as Kroschinsky wrongly asserts, the Benefits Fund and the Pension Fund were a single entity,

*Howe v. Varity Corp.*, 896 F.2d 1107, 1109 (8th Cir.1990). Medical and disability benefits vest or terminate only according to the provisions of the plan itself. *See, e.g., Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603 (7th Cir.1989); *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir.1988). In short, the letter which Kroschinsky his provided is irrelevant to his eligibility for benefits provided from the Benefits Fund.[5]

Kroschinsky finally argues that the determination of his benefits status should be overturned because Benefits Fund officials acted contrary to past practice in failing to give credit for vacation hours. *See de Nobel*, 885 F.2d at 1188 (inconsistent application of plan provisions may constitute abuse of discretion) (citing *Morgan v. Mullins*, 643 F.2d 1320, 1324 n. 4 (8th Cir. 1981)). He asserts that with respect to the 1982–83 contract year he received credit for 40 hours of vacation pay. He has presented various documents—a letter, a computer printout and a worksheet containing handwritten calculations—as evidence of that fact. Again, Kroschinsky has confused the Pension Fund with the Benefits Fund; the documents on which he relies all concern pension benefits alone.[6] Defendants have submitted the affidavit the administrator of the Benefits Fund stating that the "[f]und has never allowed credit for vacation and

holiday hours." This statement stands uncontradicted on the record, and Kroschinsky cannot resist summary judgment by making a bare allegation to the contrary. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

For all of these reasons, summary judgment will be entered on behalf of defendants.

---

5. The futility of Kroschinsky's argument is underscored by the fact that the cited regulations would do him no good even if they were applicable. Although the regulations provide that vacation hours must be counted as "hours of service" for the purpose of plan participation, a plan is obligated to credit an employee with no more than 501 hours "on account of any single continuous period during which the employee performs no duties," an amount far less than

that fact would not secure him the benefit of ERISA's minimum participation standards for pension plans. Under 29 U.S.C. § 1002(2)(A), a plan is a "pension plan ... to the extent that" it provides retirement income or results in deferred income. Likewise, a plan is a "welfare plan" to the extent that it provides medical, disability or unemployment benefits. 29 U.S.C. § 1002(1). Thus, a hybrid plan would be exempt from ERISA's minimum participation requirements to the extent that it provides the non-pension benefits Kroschinsky claims. *Cf. Howe*, 896 F.2d at 1110 (mere fact that welfare benefits continued into retirement did not trigger vesting requirements under ERISA).

what Kroschinsky actually received for the period of his disability. 29 C.F.R. § 2530.200b–2(a)(2)(i).

6. The letter, signed by an employee of the Pension Fund, advises Kroschinsky that he earned 1294 hours of pension credit during the 1982–83 contract year. Similarly, the computer printout is headed "S.T.A. of Baltimore—I.L.A. Pension Fund" and refers to "pension credits eligibility requirements." Although there is no notation on the worksheet indicating that the calculations relate only to the Pension Fund, the worksheet entry for 1982–83 (1294 hours) corresponds to 1982–83 figures in the letter and the printout. Furthermore, the fact that the worksheet and the computer printout both contain a figure for the year in issue (1983–84: 1034 hours) different from the 1087 hours of credit toward Group A benefits status that Kroschinsky actually received forecloses the possibility that those documents set out calculations relevant to his eligibility under the Benefits Fund.