Peter J. LADZINSKI

v.

MEBA PENSION TRUST, et al.

Civil No. Y–96–874.

United States District Court,
D. Maryland.

Jan. 17, 1997.

---

Paul F. Evelius and Wright, Constable & Skeen, Baltimore, MD, for Plaintiff.

Marilyn L. Baker, Joseph R. House, and Mooney, Green, Baker, Gibson and Saindon, P.C., Washington, DC, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

This suit arises from a dispute over the amount of pension benefits Peter J. Ladzinski ("Ladzinski") is eligible to receive from the MEBA Pension Trust (the "Pension Plan"). Ladzinski filed a three count complaint challenging the calculation of his pension benefits to which Defendants filed a Motion for Summary Judgment.

### I. Facts

#### A. The Pension Plan

The Pension Plan is a multi employer/employee pension benefit plan within the meaning of the Employee Retirement Income Security Act ("ERISA"). The Pension Plan results from collective bargaining agreements between various maritime employers and a labor organization representing licensed marine officers pursuant to the Labor Management Relations Act of 1947 ("LMRA").

The Pension Plan is administered by a Board of Trustees, consisting of equal numbers of employer-designated trustees and union-designated trustees, in accordance with the Agreement and Declaration of Trust Establishing the MEBA Pension Trust ("Trust Agreement") and the MEBA Pension Trust Regulations ("Regulations"). Under the Regulations, pension benefits are calculated based on the number of quarters of "Pension Credit" a retiree has earned.

Although the Pension Plan was established in December 1955, employees may earn "Past Service Credit" ("PSC") for years prior to the establishment of the plan if certain requirements set out in the Regulations are met. (Regs. § 3.02(a)). An employee is entitled to earn PSC if he worked at least 200 days of covered employment between January 1951 and December 31, 1955 and remained available for employment as a licensed marine officer during that entire period. (Regs. § 3.02(a)(1)). Under the Regulations, membership in the National Marine Engineers' Beneficial Association ("MEBA") is evidence of availability for employment as a licensed marine officer. (Regs. § 3.02(a)(1)).

Prior to September 1962, the Trustees required union membership during the entire 1951–1955 period to use such membership as a basis for establishing availability for employment. In September 1962, the Trustees liberalized their interpretation of the Regulations so that an employee who was not a union member during the entire 1951–1955 period would be deemed available for employment if he reinstated his union membership prior to January 1, 1961, maintained his license in the interim, and worked in covered employment between January 1, 1956 and December 31, 1960 (hereinafter "liberalized availability rule"). (Def.'s Ex. A–5). On October 11, 1967, the Trustees further interpreted the availability for work regulation so that an employee who was a union member during any part of the 1951–1955 period was deemed available for work during the entire 1951–1955 period. (Pl.'s Ex. 7).

Once an employee establishes that he is entitled to PSC, the amount is generally calculated based on the days of actual covered employment worked by an employee from January 1, 1935 through December 31, 1955. (Regs. § 3.02(b)). Because of difficulty providing evidence of employment prior to 1956, the Regulations award an employee PSC for each of the periods 1935–1940, 1941–1945, 1946–1950, and 1951–1955 if he can

prove 100 days of covered employment and union membership. (Regs. § 3.02(b)(2)).

### B. Ladzinski's Pension Benefits

Ladzinski applied for his pension on June 2, 1972. (Def.'s Ex. A–6). The Pension Plan calculated his pension benefits based on 83 quarters of Pension Credit, including 26 quarters of PSC. (Def.'s Ex. A–8). The Pension Plan then informed him of its decision and advised him of his right to seek review. In August 1972, Ladzinski signed and returned to the Pension Plan a letter indicating his irrevocable concurrence with the computation of his benefits. (Def.'s Ex. A–8).

In May 1993, Ladzinski filed an appeal of his benefits determination to the Pension Plan. (Def.'s Ex. A–10). He challenged the calculation of his PSC for the period 1951–1955, arguing that, based on the 1962 liberalized availability rule, he should have received credit for the entire period, an additional 13 quarters. Although Ladzinski's appeal was filed 20 years after he began receiving pension benefits, the Trustees considered his appeal. On March 21, 1994, the Pension Plan notified Ladzinski that his appeal had been denied, because the 1962 liberalized availability rule did not change the method of calculating pension benefits. (Def.'s Ex. A–13).

On March 22, 1996, Ladzinski filed his three count complaint challenging the calculation of his pension benefits and seeking an additional 34 quarters for periods prior to 1955. Count I alleges that Defendants improperly interpreted the PSC Regulations and, thereby, miscalculated his pension benefits in violation of 29 U.S.C. § 1132(a)(1)(B). Count II alleges that a structural defect exists in the Pension Plan which entitles Ladzinski to relief pursuant to section 302 of LMRA. 29 U.S.C. § 186. Finally, Count III alleges that the Pension Plan Trustees breached their fiduciary duty by (i) improperly interpreting the PSC regulations and miscalculating his pension benefits and (ii) illegally discriminating against Ladzinski on the basis of non-membership in a union.

### II. *Subject Matter Jurisdiction*

In Count II, Ladzinski alleges that "Defendants' illegal, arbitrary and capricious conduct constitutes a structural defect in the Trust," (Complaint ¶ 28), and seeks relief based on section 302(e) of LMRA. 29 U.S.C. 186(e). The crux of Ladzinski's challenge is that the manner in which the Trustees administered the Pension Plan constitutes a "structural defect."

The United States Supreme Court has ruled that section 302(e) "does not provide authority for a federal court to issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in the manner described in § 203(c)(5)." *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 587, 113 S.Ct. 2252, 2257, 124 L.Ed.2d 522 (1993). The Supreme Court held that the jurisdictional grant in section 302(e) only extends to violations of sections 302(a) and (b), "which happens, not when funds are administered by the trust fund, but when they are 'pa[id], len[t], or deliver[ed]' to the trust fund, § 302(a), or when they are 'receive[d], or accept[ed]' by the trust fund, or 'request[ed], [or] demand[ed]' for the trust fund, § 302(b)(1)." *Id.* at 588, 113 S.Ct. at 2257.

Ladzinski is not challenging "the purpose for which the trust fund is 'established,'" *Id.* at 588, 113 S.Ct. at 2257, but rather the manner in which the Trustees are administering the Pension Plan. Based on the Supreme Court's holding in *Demisay*, this Court has no jurisdiction under section 302(e) with respect to Count II. Accordingly, Count II must be dismissed for lack of subject matter jurisdiction.

### III. *Statute of Limitations*

In Count I, Ladzinski alleges that he is entitled to relief from "Defendants' illegal, arbitrary and capricious conduct" pursuant to section 502(a)(1)(B) of ERISA. 29 U.S.C. § 1132(a)(1)(B). ERISA does not provide an explicit limitation period for bringing a private cause of action, thus the federal courts look to state law for an analogous limitation provision. The issue raised in Count I is analogous to a breach of contract action, and under Maryland law the limitations period

for a contract action is three years. MD. CODE ANN., CTS. & JUD.PROC. § 5–101. Accordingly, Maryland's three-year statute of limitations for breach of contract actions is applicable to Count I. *Dameron v. Sinai Hosp.*, 815 F.2d 975, 981 (4th Cir.1987); *Kroschinsky v. Trustees of Steamship Trade Ass'n/Int'l Longshoremen's Ass'n Trust Fund*, 790 F.Supp. 559, 561 (D.Md.1992).

■ Count III alleges that the Pension Plan Trustees breached their fiduciary duty. The federal statute of limitations applicable to an ERISA action for breach of fiduciary duty with respect to a pension plan requires the action to be filed by the earlier of (i) six years after the date of the last action which constituted a part of a breach or (ii) three years after the earliest date on which the plaintiff knew or reasonably could have known of a breach. 29 U.S.C. § 1113. The Maryland statute of limitations applicable to a common law breach of fiduciary duty action is three years. MD.CODE ANN., CTS. & JUD. PROC. § 5–101; *Canterbury Riding Condominium v. Chesapeake Investors, Inc.*, 66 Md.App. 635, 638, 505 A.2d 858 (Md.Ct. Spec.App.1986).

■ A cause of action for pension benefits accrues when an application for benefits is approved or denied. *Rodriguez v. MEBA Pension Trust*, 872 F.2d 69, 72 (4th Cir.), *cert. denied*, 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989); *Tanzillo v. Local Union 617, Int'l Bhd. of Teamsters*, 769 F.2d 140, 143–44 (3d Cir.1985). The initial determination of Ladzinski's benefits was made in 1972, at which time he expressed his irrevocable concurrence in the computation of his pension benefits.

■ Ladzinski now argues that his cause of action did not accrue until March 21, 1994 when the Pension Plan notified him that it had denied his administrative appeal, relying on the Pension Plan's assertion that its decision was "now final" and constituted an exhaustion of his administrative remedies. However, the Pension Plan's decision to review the otherwise stale claim[1] will not revive the federal cause of action. In a similar case, the United States District Court for the District of Maryland ruled that once a limitations period has run a claim cannot be revived by an unsuccessful administrative appeal of a plan's original determination of pension benefits. *Kroschinsky*, 790 F.Supp. at 562.

Accordingly, the applicable statutes of limitations ran long before Ladzinski filed his initial administrative appeal in 1993 or this suit in 1996. *Dameron*, 815 F.2d at 982 n. 7.

### IV. Merits[2]

#### A. Calculation of Pension Benefits

[7] Under ERISA, the Court is required to review a denial of benefits under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). The pension documents at issue in this case give the Trustees broad discretion to interpret and administer the pension plan. (Trust Agreement § 4.4). Accordingly, the Court will review Ladzinski's claims under the abuse of discretion standard. *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80, 85 (4th Cir.1993) ("[I]n reviewing actions of a fiduciary who has been given discretionary powers to determine eligibility for benefits and to construe language of an ERISA plan deference must be shown, and the fiduciary's actions will be reviewed only for abuse.").

■ Ladzinski suggests that the Trustees should have determined actual covered employment using United States Coast Guard

---

1. Ladzinski argues that because the appeal procedure in effect in 1972 when his application was considered did not have a time limit for challenging his benefit determination, he was free to appeal at any time and, thus, preserve his ERISA action indefinitely. Two factors mitigate against Ladzinski's position. First, the Pension Plan amended its appeal procedures in 1977 to require an appeal within 60 days. Second, the purpose of the statute of limitations would be defeated if Ladzinski were able to preserve his ERISA action indefinitely. Therefore, even if the Pension Plan did not impose a strict deadline for filing appeals in 1972, Ladzinski's appeal 20 years after he concurred in the benefit calculation and began receiving pension benefits can not be considered timely under federal law.

2. Although Ladzinski's claims are time-barred, the merits of the claim will be discussed briefly.

records of sea service rather than using union membership combined with a minimum number of hours as a substitute. (Trust Regulations § 3.02). The Fourth Circuit has cautioned against substituting the Court's preference absent a showing that the decision of the Trustees was unreasonable. *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1188 (4th Cir.1989). Applying the abuse of discretion standard to the Pension Plan's calculation of Ladzinski's pension benefits, the Trustees' action was not unreasonable nor an abuse of discretion. Accordingly, the Court finds that summary judgment in favor of the Defendants is appropriate on the merits of Ladzinski's claims regarding the calculation of his pension benefits.

### B. Pro–Union Discrimination

Ladzinski also argues that the use of union membership in determining both availability for work and calculating actual employment is discriminatory against non-union employees and, thus, unlawful. The Pension Plan admits that its Regulations consider union membership in calculating PSC, but argue that such consideration is not per se unlawful discrimination.

The National Labor Relations Act provides that it is an unfair labor practice for a labor organization or its agents to discriminate against an employee "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. 158. To be actionable under this provisions, discrimination must discourage or encourage union membership. *NLRB v. Brown*, 380 U.S. 278, 286, 85 S.Ct. 980, 985, 13 L.Ed.2d 839 (1965).

The issue of a pension plan that distinguishes between union and non-union members in determining past service credit was considered by the United States Court of Appeals for the Fifth Circuit in *Batchelor v. Brotherhood of Elec. Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 446–47 (5th Cir.1989).[3] The Fifth Circuit acknowledged that "distinguishing between union and non-union members in determining

past service credits is discriminatory." *Id.* at 446. Nevertheless, it ruled that the discrimination was not unlawful because it "has no effect on a participant's decision whether to join the union because the past service credit is based on past, not current or future, union membership." *Id.* at 446; *accord Truck Drivers Local Union No. 807 v. NLRB*, 506 F.2d 1382, 1385 (2d Cir.1974) (holding that it is "wholly unrealistic to suppose that current employees would be encouraged to joint the union by the expectation that in the years to come" the plan would provide a similar past service credit).

Here although the Regulations are discriminatory in that they distinguish between union and non-union employees, they are not unlawful because they are solely concerned with union membership prior to the establishment of the Pension Plan and neither encourage nor discourage union membership. Accordingly, summary judgment in favor of the Defendants is appropriate on the merits of Ladzinski's discrimination claims.

Based upon the foregoing analysis, Defendants' Motion for Summary Judgment will be granted.

---

**3.** Unlike the Pension Plan at issue in this case, the pension plan regulations in *Batchelor* expressly authorized past service credit solely on

the basis of union membership without any requirement of proof of actual employment. *Batchelor,* 877 F.2d at 445.